In re ESTATE OF Mary L. BECHTEL, Deceased.

Larry E. Bechtel, Petitioner

Donald R. Bechtel and Michael T. Bechtel, Respondents.

Appeal of Donald R. Bechtel and Michael T. Bechtel.

Superior Court of Pennsylvania.

Argued Dec. 11, 2013.
Filed May 19, 2014.

835

BEFORE: DONOHUE, J., OTT, J., and PLATT, J.*

OPINION BY OTT, J.:

Donald R. Bechtel and Michael T. Bechtel bring this appeal from the order entered in the Orphans' Court Division of the Court of Common Pleas of Dauphin County on April 15, 2013, that (1) amended a surcharge imposed against Donald to $17,230.40, and (2) dismissed the motion filed by Donald and Michael for witness fees, cost of suit, and reasonable attorneys' fees. Donald and Michael challenge both rulings in this appeal. Based upon the following, we reverse and remand for proceedings consistent with this opinion.

The orphans' court summarized the underlying facts of this case as follows:

On April 9, 1996, as a result of injuries she had sustained in a serious automobile accident, the Decedent [Mary L. Bechtel] executed a Power of Attorney (hereinafter, "POA") naming her son, Donald, as her attorney-in-fact, a designation which remained in effect until the day of her death. Pursuant to the authority granted by the POA, Donald managed the Decedent's finances, paying her bills and depositing any income into her bank account(s). Donald and his wife, Donna, to whom Donald had apparently delegated some of his duties, were responsible for writing hundreds of checks on behalf of the Decedent and at the Decedent's request.

On October 27, 2006, apparently to protect against possible transfers of tracts of the family farm to third parties, the Decedent executed a Fee Simple Deed (the "Deed") which purported to transfer an undivided ninety-five percent (95%) interest in the Bechtel family farm located in Elizabethville, Dauphin County, Pennsylvania (the "Home-

Christian S. Daghir, Harrisburg, for appellants.

Thomas P. Gacki, Harrisburg, for appellee.

* Retired Senior Judge assigned to the Superior Court.

stead") to herself and an undivided five percent (5%) interest of the same to Donald, as joint tenants with the right of survivorship. On the same day, the Decedent and Donald entered into a written agreement (the "Agreement") whereby, *inter alia,* Donald agreed, upon the death of the Decedent, to sell the Homestead and distribute the net proceeds from the sale in accordance with the terms of the Decedent's Last Will and Testament.

On October 23, 2009, the Decedent died testate and was survived by Donald, Michael and Larry. Shortly thereafter, on November 5, 2009, Donald and Michael were appointed coexecutors of the Decedent's Estate as provided in the Decedent's Last Will and Testament dated January 4, 2008. The Homestead was sold on January 5, 2011.

Orphans' Court Opinion, 12/21/2012, at 2–3.

Following the death of Mary L. Bechtel (the Decedent), Larry, a residuary beneficiary under her Will, filed: (1) a civil action against Donald, alleging breach of the Agreement to sell the Homestead, and demanding one-third of the proceeds from the sale of the decedent's farm without any deduction for inheritance tax, administrative expenses, funeral expenses, or any other expenses of the estate; (2) a petition to have Donald and Michael removed as co-executors of Decedent's estate, and to have Larry appointed as Administrator d.b.n.c.t.a.[1]; and, (3) objections to the Account filed by Donald, as attorney-in-fact for Decedent.[2] On March 26, 2012, the civil action instituted by Larry was transferred from the civil court division to the orphans' court division.[3] By order dated May 14, 2012, the three matters filed by Larry were consolidated, and the orphans' court held hearings on May 29, 2012, and July 30, 2012.

Following these hearings, the court, on December 21, 2012, (1) dismissed Larry's civil complaint against Donald; (2) sustained Larry's objections to the Account, and surcharged Donald $17,245.40; and (3) denied Larry's petition for removal of Donald and Michael as co-executors, and (4) ordered Donald and Michael to file a First and Final Account and Petition for Distribution of the Estate of Mary L. Bechtel within thirty days of the date of the receipt of the Notice of Appraisement of the Inheritance Tax return by the Pennsylvania Department of Revenue or from the date of service of the Order, whichever was later. *See* Order, 12/21/2012. Specifically, the orphans' court judge found:

1. Donald had not breached the terms of the Agreement at that time, since

[t]he evidence presented demonstrates that after the Decedent's death and Donald's appointment as co-executor of the Estate, the Homestead was sold in

---

1. *See* 20 Pa.C.S. § 3159.

2. Although the Account is captioned as "Account of Donald R. Bechtel and Donna Bechtel, Agents for Mary L. Bechtel," only Donald was named the Decedent's attorney-in-fact pursuant to the 1996 Power of Attorney executed by the Decedent. Donna Bechtel, Donald's wife, was added as a signer to Decedent's Mid Penn Bank checking account on February 7, 2000, and the Decedent established joint ownership of the checking account with Donald and Donna on March 26, 2002.

3. The orphans' court explained: "Larry E. Bechtel had ... initiated a civil action at No. 2011–CV–7561 on August 4, 2011; however, the Hon. Scott A. Evans determined that the civil court lacked jurisdiction to hear the matter, and upon sustaining a preliminary objection to that effect, transferred the case to the orphans' court division by Order dated March 26, 2012." Orphans' Court Opinion, 12/21/2012, at 1 n. 1.

accordance with the Decedent's wishes, as explained in the Agreement, and Donald deposited the full amount of the net proceeds of the sale, $369,276.89, into the Mary L. Bechtel Estate account with Mid Penn Bank;

2. Donald "breached his fiduciary duty as the Decedent's attorney-in-fact in that he failed to '[k]eep full and accurate record of all actions, receipts and disbursements on behalf of the principal.' 20 Pa.C.S. § 5601(e)(4)"; and,

3. Larry had not "clearly proven the reason(s) for which Donald and Michael should be removed," and there was no evidence "that the conduct of Donald or Michael has endangered (or will endanger) the administration of the Estate to a degree which would require intervention by this Court." Orphans' Court Opinion, *supra,* at 3–5.

On December 31, 2012, Donald and Michael filed a Motion for Post Trial Relief, requesting, *inter alia,* that the orphans' court modify and change the December 21, 2012 Order to remove the surcharge against Donald.[4] On January 22, 2013, Donald and Michael filed a Post–Trial Motion for Witness Fees, Costs of Suit and Reasonable Attorneys' Fees.

On April 15, 2013, the orphans' court entered an order, granting relief in part and amending the amount of the surcharge against Donald to $17,230.40 to correct a mathematical error, and dismissing the motion for witness fees, cost of suit and reasonable attorneys' fees as untimely filed. This appeal followed.

At the outset, we state our standard of review:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*In re Estate of Warden,* 2 A.3d 565, 571 (Pa.Super.2010) (citations and quotations omitted), *appeal denied,* 610 Pa. 580, 17 A.3d 1255 (2011).

We now turn to the issues raised in this appeal, namely, the orphans' court's imposition of a surcharge against Donald, and the court's dismissal of Donald and Michael's request for counsel fees and costs.

### SURCHARGE

In 1996, the Decedent executed a power of attorney naming her son, Donald, her attorney-in-fact. The document remained in effect until the Decedent's death in 2009. On September 30, 2011, Donald filed an Account with the orphans' court

---

4. The Pennsylvania Orphans' Court Rules do not provide for post-trial motions, but instead provide for exceptions. *See* Pa.O.C. Rule 7.1(a) ("[N]o later than twenty (20) days after entry of an order, decree or adjudication, a party may file exceptions to any order, decree or adjudication which would become a final appealable order under Pa.R.A.P. 341(b) or Pa.R.A.P. 342 following disposition of the exceptions. If exceptions are filed, no appeal shall be filed until the disposition of exceptions[.]"). Here, since the December 31, 2012 motion was filed within the time frame for filing exceptions, we will treat the motion as filed pursuant to Pa.O.C. Rule 7.1(a).

for the period from 1996 to 2009. The Account showed deposits and withdrawals for the Decedent's Mid Penn Bank checking account for the years 1996–2009, and included 36 checks with no identified payee. The checks without payees, according to year, are as follows: 1999—four checks; 2000—ten checks; 2001—nine checks; 2002—ten checks; 2003—two checks; and 2009—one check. The largest unaccounted-for check was Check Number 605, written on July 13, 1999, for $10,000. The orphans' court sustained Larry's objections to the Account, and surcharged Donald $17,230.40—the total of the 36 checks—for breach of fiduciary duty.

The orphans' court judge, in his memorandum opinion filed together with the order of December 21, 2012, imposing the surcharge, found:

> Donald breached his fiduciary duty as the Decedent's attorney in fact in that he failed to "[k]eep full and accurate record of all actions, receipts and disbursements on behalf of the principal." 20 Pa.C.S. § 5601(e)(4). The testimony at the hearing established that Donald and/or Donna had, while preparing the Homestead for sale, inadvertently destroyed several years' worth of financial records relating to Donald's representation of the Decedent. A thorough review of the record shows that Donald could not account for the disbursement of at least thirty-six (36) checks written while he was acting as the Decedent's attorney-in-fact. By this Court's tally, the total of the disbursements represented by these missing checks was $17,245.40, and it is that amount for which Donald will be surcharged.

Orphans' Court Opinion, 12/21/2012, at 4.

Subsequently, when the judge addressed Donald's exceptions to the imposition of the surcharge, he amended the surcharge to $17,230.40, and justified his decision as follows:

> While we recognize that § 5601, which codifies certain duties deemed to be part and parcel of this fiduciary relationship, did not take effect until December 12, 1999, several months after four (4) of the [unaccounted-for checks] were written, the law in this Commonwealth, albeit decisional in nature, has, for centuries, conferred upon a fiduciary the duty to keep record of and account for his actions while acting in his capacity as agent for the principal. *See, e.g., Fischer v. Riehl* [219 Pa. 505], 69 A. 70 (Pa. 1908).

Orphans' Court Opinion, 4/15/2013, at 2.

Donald argues, *inter alia,* he had no duty under the Probate, Estate and Fiduciaries (PEF) Code to keep full and accurate records for four checks drawn in 1999 from the Decedent's Mid Penn Bank checking account, totaling $12,945.00, since the statutory requirement for a fiduciary to "[k]eep a full and accurate record of all actions, receipts and disbursements on behalf of the principal," did not become effective until December 12, 1999. *See* Appellants' Brief at 17–18. Donald further argues that there was evidence that the Decedent made many gifts to her children and relatives, which were in the amount of $10,000.00, the same amount as Check Number 605, dated July 13, 1999, which was called into question.[5] *id.* at 18. In addition, Donald contends that he presented testimony and evidence regarding the identity of the payee of at least two checks, Check Number 625, dated October 6, 1999, for $2,790.00 and Check Number

---

**5.** There were three other unaccounted-for checks for the year 1999: Check Number 594, dated 6/19/1999, for $50.00; Check Number 620, dated 9/8/1999, for $105.00, and Check Number 625, dated 10/6/1999, for $2,790.00.

698, dated September 11, 2000, for $400.00. *Id.* at 19. Finally, Donald maintains: "Only 36 of the total entries to the account were called into question. If remaining transactions were all acceptable and deemed proper, it is logical to presume all the transactions were acceptable and proper." *Id.* at 25.

■ In considering Donald's argument, we are mindful of the following legal principles:

[S]urcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care.

*In re Miller's Estate,* 345 Pa. 91, 26 A.2d 320, 321 (1942).

Where a fiduciary claims credit for disbursements made by him, the burden rests upon the fiduciary to justify them. Proper vouchers or equivalent proof must be produced in support of such credits. Accountant's unsupported testimony is generally insufficient.

*In re Strickler's Estate,* 354 Pa. 276, 47 A.2d 134, 135 (1946).

Once the fiduciary has validated the disbursements, the burden then shifts to the objector to disprove them.

*See Estate of Stetson,* 463 Pa. 64, 345 A.2d 679 (1975).

An agent acting under a power of attorney has a fiduciary relationship with the principal. In the absence of a specific provision to the contrary in the power of attorney, the fiduciary relationship includes the duty to: ... (4) Keep a full and accurate record of all actions, receipts and disbursements on behalf of the principal.

20 Pa.C.S. § 5601(e)(4) (emphasis added).

■ Initially, we note that 20 Pa.C.S. § 5601(e)(4), *supra,* which was relied upon by the orphans' court, ·was added by amendment to Section 5601 in 1999, by Act 1999–39. The Act was approved on October 12, 1999, and took effect 60 days later, on December 12, 1999. The Historical and Statutory Notes following Section 5601 explain that certain amendments of Act 1999–39 only applied to powers of attorney executed on or after the effective date of the amendments, and the remaining amendments, which include Section 5601(e), applied to any use of a power of attorney after the effective date of the amendments. *See* Act 1999–39, Section 13(8) ("The remaining amendments in this Act shall apply beginning with the effective date of the amendments of those sections"); Section 14(2) ("The remainder of this Act shall take effect in sixty (60) days"). Therefore, we agree with Donald that Section 5601(e)(4) does not apply to his use of the power of attorney prior to the effective date of the amendment, December 12, 1999, and, consequently, he had no duty under the statute with regard to the four 1999 checks at issue in this case.

■ Nevertheless, prior to the amendment of Section 5601, the seminal decision in *In re Strickler's Estate, supra,* established the duty of a fiduciary to justify disbursements claimed by him. Under *Strickler,* "[a]ccountant's unsupported testimony is generally insufficient" *Id.* at 135. Accordingly, the orphans' court must evaluate the sufficiency of the accountant's testimony and evidence. *See e.g., In re Estate of Bryan,* 513 Pa. 554, 522 A.2d 40 (1987) (discussing court's credibility determination where *Strickler* applied). Here,

however, the orphans' court made no reference to the *Strickler* standard, and merely cited *Fischer v. Riehl*, 219 Pa. 505, 69 A. 70 (1908), without further explanation.[6] *See* Orphans' Court Opinion, 4/15/2013, at 2. Even though the orphans' court acknowledged general case law regarding the duty of a fiduciary to provide an accounting, it is patently clear that the orphans' court relied solely on the amended statute in surcharging Donald for all 36 checks, because the court provided no analysis of the testimony presented by Donald and the witnesses who testified on his behalf. In light of the arguments raised in this appeal, a summary of the relevant testimony is warranted.

Karen Paul, legal secretary to Richard Etzweiler, Esquire, who represented Donald and Michael as co-executors of the Decedent's Estate, and Donald in his capacity as agent under the power of attorney, testified regarding the preparation of the Account for Donald. She testified that at the time of the Decedent's death, the only assets the Decedent owned were a checking account at Mid Penn Bank, stocks and land. After she learned from Donald's wife, Donna, that the bank records had been destroyed in the process of preparing the Decedent's house for sale, Ms. Paul contacted the bank for copies of the statements. Although Donald's power of attorney began in 1996, the bank could only provide statements for the years starting with 1999, and the bank statements only showed the check number, date, and amount, until the year 2003, at which point cancelled checks were also available. She testified that for the years 1996 to 1999, the entries for the account came from the income tax books, and then from 1999, up to 2002, the entries had no

name for the payee. She testified that the expenses omitted from the income tax books were most likely utility and personal expenses. *See* N.T., 7/30/2012, at 11–17.

Ms. Paul identified Respondents' Exhibit 2 as a letter from Mid Penn Bank, dated November 17, 2009, indicating that the only account that was owned by the Decedent in Mid Penn Bank was a checking account, that the account was jointly owned with Donald and Donna, and that joint ownership was established on March 26, 2002. In addition, Ms. Paul identified Respondents' Exhibit 3, a letter from Mid Penn Bank with the same information and also indicating that Donna was added to the account as a signer on February 7, 2000. *See id.* at 11–12.

Further, Ms. Paul identified Respondents' Exhibit 9, admitted into evidence without objection, as a February 17, 2011, letter from Etzweiler to Thomas P. Gacki, Esquire, Larry's attorney, responding to Gacki's request for information concerning checks for which no payee was listed. *Id.* at 21. With regard to the checks at issue in this appeal, the letter stated:

2. The payee of Ck # 625 in the amount of $2,790 dated October 6, 1999, was J.H. Rissinger & Sons for new windows at the Broad Street, Elizabethville, Pennsylvania, property. Our clients were able to determine this by the book that [the Decedent] kept for income tax purposes.

\* \* \*

4. The payee of Ck # 698 was Eugene Adams, who was a dentist practicing in the Millersburg Area at that time, and this check was apparently for dentures for [the Decedent].

6. *Fischer v. Riehl*, 219 Pa. 505, 69 A. 70 (1908) involved a claim for payment of ser-

Respondents' Exhibit 9.[7]

Ms. Paul testified that she tried to get information for Check Number 605 in the amount of $10,000.00, for which no payee was listed, but the bank could not provide the cancelled check, and nobody could remember the check. N.T., 7/30/2012, at 23.

Ms. Paul identified Respondents' Exhibit 13 as a chart that she had prepared based upon statements for the Decedent's Prudential account, which was controlled by the Decedent, and from which the Decedent made gifts to her sons and to her granddaughter.[8] The chart showed gifts the Decedent made to her sons between July 1996, and March 2003, with the following totals: "Donald—$67,000, Larry—$66,000.00, Harold Bechtel (deceased)—$60,000.00, and Michael—$80,500.00." *Id.* at 37. Specifically, the chart showed Donald received $1,000.00 on July 13, 1996; $10,000.00 in December of 1997, 1998, 1999, 2000, 2001, and 2002, and $6,000.00 on March 20, 2003. Larry received $10,000.00 in December of 1997, 1998, 1999, 2000, 2001, and 2002, and $6,000.00 on March 20, 2003. Harold received $10,000.00 in December of 1997 and 1998, two separate $10,000.00 amounts in December of 2000, and $10,000.00 in December of 2001 and 2002. Michael received $4,500.00 on July 13, 1996, $10,000.00 in December of 1996, 1997, 1998, 1999, 2000, 2001, and 2002, and $6,000.00 on March 20, 2003. *See* Respondents' Exhibit 13. Ms. Paul also testified, and the chart reflects, that the Decedent gave her granddaughter, Stacy, a check for $10,000 on May 6, 1998. *See* N.T., 7/30/2012, at 41.

Donna Bechtel testified that after the Decedent's accident she would help the Decedent keep track of finances with a ledger book, she would review the Decedent's finances with her, and the Decedent knew "what was coming in and what was going out." [9] Donna stated that the Decedent put her on as a signer of the account in January of 2000, and before then the signers were the Decedent and Donald. Donna testified that the Decedent never questioned anything she did financially. When Donna was asked at trial about Check Number 605, in the amount of $10,000.00, and written on July 13, 1999, she stated that she could not recall anything about the check, and that they had tried to figure out where the check went, and who it went to, but they could not figure it out. She testified she did not sign that check because she was not a signer on the account until 2000. *Id.* at 51–53.

Donna stated the Decedent changed the account to a joint account in March of 2002, making her a co-owner on the Mid Penn Bank account. Donna stated she never used the account for her own benefit. She stated she never made any gifts on the Decedent's behalf. *Id.* at 58–59. Donna explained that the Decedent's financial records were burned by mistake when she was in the process of cleaning out and moving from her home. *Id.* at 80. The

vices rendered by the agent.

**7.** The record reflects that Donald and Michael, on May 3, 2013, filed an Emergency Motion Pursuant to Rule 208.3(a)(4) to allow .the record to be opened and modified to also include an invoice from J.H. Rissinger & Sons, Inc., for the installation of windows at the Decedent's rental property in Elizabethville, Pennsylvania, dated September 27, 1999.

On May 16, 2013, the orphans' court denied the Emergency Motion for lack of jurisdiction by virtue of the appeal filed on May 10, 2013.

**8.** Ms. Paul testified that the Decedent did not have the Prudential account at the time of her death, as the account was closed in 2003 or 2004. N.T., 7/30/2012, at 34.

**9.** N.T., 7/30/2012, at 51.

records were accidentally destroyed "before ... anybody was contesting anything." *Id.*

Stacy Fenice, formerly Stacy Bechtel, the Decedent's granddaughter, testified that she borrowed $6,000.00 from the Decedent in October of 2005, which she repaid in the amount of $200.00 in cash per month until it was paid off. She stated that her brother and her uncle, Michael, also had loans from the Decedent with similar terms. She stated that she had received a $10,000.00 gift in 1998 from the Decedent to purchase a townhouse. Stacy stated she had no information about Check Number 605 for $10,000.00. *Id.* at 86–91.

Donald testified after his father died he cared for his mother in his home on different occasions, provided transportation for her, rented farmland for her, and took care of the rental properties and farm properties, and helped his mother. With regard to the Decedent's finances, Donald stated that he had no control over how the Decedent spent her cash, did not spend her cash for her, did not make any gifts on behalf of the Decedent, and did not make any gifts to himself using the power of attorney. When questioned about Check Number 605, Donald stated he did not remember writing or signing that check. *Id.* at 97–108. Donald testified that Donna would sign the checks, when she could not get them signed by the Decedent or himself. *See* N.T., 5/29/2012, at 81. He identified "Dr. Adams" as the payee for one of the checks in question. *Id.* at 85.

Michael Bechtel testified the Decedent had given him loans that he had repaid. He also stated the Decedent gave him $9,000.00 as a gift to buy a car. *Id.* at 111–112. He testified he was not aware of

the Decedent's finances, and that she gave him money from time to time when he needed it. *See* N.T., 7/30/2012, at 120–121. He stated that when the Decedent went to the hospital, she gave him $5,000.00 cash. N.T., 5/29/2012, at 110.

In light of the unrebutted testimony discussed above, and specifically the Decedent's history of gift-giving to her sons, mostly in $10,000.00 amounts, between the years 1996 and 2003, we conclude the orphans' court judge committed error in failing to apply *Strickler, supra,* and evaluate the evidence in order to answer the question of whether the unaccounted-for checks issued in 1999 represent a breach of fiduciary duty.

■ Furthermore, the orphans' court judge imposed a surcharge for every unaccounted-for check written after December 12, 1999. The judge provided no analysis as to how Donald failed to perform his fiduciary duty under Section 5601(e)(4), given that of 850 itemized expenses for the ten year period from 2000 through 2009, there were only 32 checks at issue, and the court specifically found that the records were inadvertently destroyed.[10] Again, we conclude the orphans' court judge committed an error of law.

Accordingly, based on our review of the record, we reverse the order of the orphans' court regarding the surcharge and remand for the court to use the appropriate standards and analyze the evidence thereunder.

### COUNSEL FEES AND COSTS

■ Next, Donald and Michael contend that the orphans' court erred in dismissing their "Post–Trial Motion for Witness Fees, Costs of Suit and Reasonable Attorneys'

10. We note that after March 26, 2002, the date the Decedent changed the ownership of the Mid Penn Bank checking account, any remaining amounts in that account did not pass under her Will, but passed directly to Donald and Donna as joint owners with the right of survivorship.

Fees" on the grounds that the motion was untimely filed beyond the 20–day time period provided by Pa.O.C. Rule 7.1(a) for filing exceptions in orphans' court matters.

It is clear from the record that Donald and Michael filed the post-trial motion within 30 days of the orphans' court's December 21, 2012 order.[11] Donald and Michael alleged Larry had no basis to file any of the three actions. The motion sought relief based upon 42 Pa.C.S. § 2503, which states, in relevant part:

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

. . .

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

. . .

(9) Any participant who is awarded counsel fees because conduct of the other party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

42 Pa.C.S. § 2503(7), (9).

With regard to the present request for counsel fees, this Court's decision in *Freidenbloom v. Weyant*, 814 A.2d 1253, 1255 (Pa.Super.2003), *overruled in part on a different basis, Miller Electric Co. v. DeWeese*, 589 Pa. 167, 907 A.2d 1051 (2006), is instructive. In *Freidenbloom*, this Court determined that a petition for counsel fees pursuant to 42 Pa.C.S. § 2503(7) was untimely filed thirty-six days after a praecipe for discontinuance. The *Freidenbloom*

Court held that "since a praecipe for discontinuance constitutes a final resolution of the case and has the effect of a final judgment, a trial court may consider a petition for fees *filed within 30 days* of the entry of final judgment." *Id.* at 1255 (emphasis added). In support of its holding, the *Freidenbloom* Court cited 42 Pa.C.S. § 5505, which provides that a trial court generally retains jurisdiction for 30 days after the entry of a final order.[12] *Id.* at 1255.

Here, following the orphans' court's December 21, 2012 order, dismissing Larry's civil action and Larry's petition for removal of coexecutors, Larry did not file exceptions, and Donald and Michael filed their motion for counsel fees and costs within 30 days of the entry of the order. Accordingly, in light of *Freidenbloom*, we conclude that the motion was timely and the orphans' court erred in finding that it was without jurisdiction to entertain the request for counsel fees.

Having examined the claims presented by Donald and Michael, and having found merit in the issues raised in this appeal, we reverse the orphans' court's order of April 15, 2013, as to the surcharge and the dismissal of the motion for counsel fees and costs, and remand for proceedings consistent with this opinion.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

---

11. Because the thirtieth day fell on January 21, 2013, which was a legal holiday, the motion was timely filed on January 22, 2013. *See* 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday [or a legal holiday] . . . such day shall be omitted from the computation.").

12. A final order is any order that either disposes of all claims and all parties, is expressly defined as a final order by statute, or is entered as a final order upon an express determination that an immediate appeal would facilitate resolution of the entire case. *See* Pa. R.A.P. 341.