J-S19014-25                    2025 PA Super 136

IN RE: DOROTHY S. BEAM, : IN THE SUPERIOR COURT OF
PRINCIPAL : PENNSYLVANIA
:
:
:
APPEAL OF: DAVID A. JASKOWIAK, :
ADMINISTRATOR OF THE ESTATE OF :
DOROTHY S. BEAM :
:
: No. 768 EDA 2024

Appeal from the Order Entered February 7, 2024
In the Court of Common Pleas of Philadelphia County Orphans' Court at
No(s):  427PR of 2020

BEFORE:  PANELLA, P.J.E., STABILE, J., and BECK, J.

OPINION BY PANELLA, P.J.E.:                    **FILED JULY 1, 2025**

David A. Jaskowiak, Administrator of the Estate of Dorothy S. Beam, appeals from the decree entered February 7, 2023, in the Court of Common Pleas of Philadelphia County Orphans' Court by the Honorable George W. Overton.  The Decree confirmed the First and Final Account of Vaneeda Days as agent under power of attorney for Dorothy S. Beam, with the exception of two objections which were sustained:

> Objection No. 1 was sustained noting that the Accountant failed to account for the entire period for which she acted under the power of attorney.
>
> Objection No. 11 was sustained and the amount of $32,534.28 was surcharged to the Accountant.

After careful review, we reverse and remand.

We glean the following facts from the certified record. On July 20, 2016, Dorothy S. Beam, as principal, executed a power of attorney ("POA")

appointing Days, her great niece, as her agent. Days first exercised her authority over Beam's assets that same day. Beam began residing at Renaissance Healthcare & Rehabilitation ("Renaissance") on July 21, 2018, where she received long-term care and medical treatment until her death.

On December 26, 2018, Beam (hereinafter "Decedent") died intestate, and was survived by Days and her great-nephew, Shaheed Days. At the time of her death, Decedent's account at Renaissance had an outstanding balance of $32,534.28, which Days failed to pay. Nevertheless, Days continued to withdraw funds from Decedent's bank accounts in the 5 months following her death, until the account balances were entirely depleted.

Appellant, who was initially contacted by Renaissance but did not represent them in this matter, was granted Letters of Administration by the Philadelphia Register of Wills on February 5, 2020. On April 27, 2020, Appellant filed a petition for citation requesting that Days be ordered to file an account of her activities as agent under POA pursuant to 20 Pa.C.S.A. § 5610. In his petition, Appellant alleged that the bank records he obtained as administrator of Decedent's estate indicated a significant number of unexplained transactions had occurred following Days's appointment as agent, totaling at least $140,205.95, for which she should be required to account. *See* Petition for Account, 3/30/20, at ¶ 20. Specifically, Appellant pointed to the following transactions:

- $40,368.00 in unexplained cash withdrawals from Citizens Account #9658 between August 3, 2016 and March 27, 2019, including

withdrawals occurring 3 months after Decedent's death in the amount of $7,354.00;

- $34,383.91 in unexplained ATM, debit, and overdraft charges from Citizens Account #9654 between August 10, 2016 and May 9, 2019, including purchases and charges occurring 5 months after Decedent's death in the amount of $1,569.04; and

- $63,885.00 in unexplained withdrawals from Freedom Credit Union Account #2588 between April 21, 2017 and October 21, 2018.

*Id.* at ¶ 19. Additionally, Appellant alleged Days had "engaged in impermissible self-dealing, [failed] to act in the best interest of [Decedent,] and otherwise breached her fiduciary duties to [Decedent], her Principal." *Id.* at ¶¶ 31-32. The court ordered Days to prepare and file a formal account by decree dated July 26, 2021. Despite the decree, Days failed to file an account, and multiple contempt proceedings ensued.

On June 14, 2022, Days filed a first and final account of her actions as POA for the period of July 20, 2016 to December 26, 2018, accompanied by a petition for adjudication, in which she acknowledged the outstanding amount owed to Renaissance. *See* Petition for Adjudication and Statement of Proposed Distribution, 6/10/22, at 4. Notably, none of the expenses included in Days's account corresponded with or explained the debit transactions and cash withdrawals cited in the bank statements.

On July 7, 2022, Appellant filed 21 objections to the account, alleging, *inter alia*, that Days failed to pay Decedent's long-term care expenses, misappropriated and comingled assets, and engaged in self-dealing. *See* Objections, 7/7/22, at ¶¶ 11-14. Appellant also alleged that the account filed

- 3 -

by Days was inadequate because it failed to: account for the entire period of time during which she acted as agent under POA; list all receipts, disbursements, and distributions, the dates they occurred, the sources of the receipts and payments, the financial institutions and accounts involved, the methods of payment, the persons to whom disbursements and distributions were made, and the purpose thereof; list all expenses allegedly incurred on behalf of Decedent or paid with her assets; and provide receipts for each expenditure or an explanation as to why expenses were paid in cash opposed to checks or other traceable payment methods. *See id.*, at ¶¶ 1, 3-5.

On October 13, 2022, the court entered a decree granting Appellant's motion to compel responses and discovery and directed Days to answer and submit the discovery served upon her within 10 days or face possible sanctions or additional contempt proceedings. Days failed to comply and was precluded from offering evidence, cross examining witnesses, or presenting a defense at trial. *See* Decree, 12/30/22. Counsel for Days filed a petition to withdraw from representation, which the court denied, unless Days obtained new counsel, on January 4, 2023. The certified record shows that the court provided notice to the parties scheduling trial for January 24, 2023.

Neither Days nor her counsel appeared at the January 24th trial, at which Appellant noted Days had failed to provide any requested documents, receipts, or records of her actions as agent, despite the court's December 30th decree. *See* N.T. Trial, 1/24/23, at 3-4. Appellant argued that the alleged

- 4 -

expenditures Days included in her accounting were "practically and statistically an impossibility" as they were "exactly the same on the ledger that she submitted for every month[.]" *Id.* at 5. The court admitted 32 exhibits into evidence, including the records of Decedent's Citizens Bank and Freedom Credit Union accounts, as well as the corresponding account summaries prepared by Appellant, which showed the location, date, and amount of each unaccounted-for cash withdrawal, totaling $140,205.95 across all 3 accounts. *Id.* at 6, 11, 19.

Appellant noted that the Renaissance bill in the amount of $32,534.28 remained outstanding and that on August 3, 2018, Days provided an authorization to Renaissance to complete an application for Medicaid long-term care benefits to potentially assist with covering Decedent's expenses should her personal resources become exhausted. *Id.* at 7-8. However, Appellant indicated the application submitted by Renaissance was denied because Days had not provided the required documentation, and Appellant, acting as administrator, was unable to apply "because it was clear [he] could not account [for and explain the] massive cash withdrawals" from Decedent's 3 accounts. *Id.* at 8. When Appellant requested the court to impose a surcharge against Days in the amount of $140,205.95, the following exchange ensued:

> The Court:        Why would we assess her [$140,205.95] when the [Renaissance] bill is [$32,534.28]?

[Appellant]: It's not just the question of the bill for Renaissance. The question is the loss of estate; the unexplained transfers from the estate of [$140,205.95], which she has not accounted for. As agent under [POA] --

The Court: But she is a beneficiary too, isn't she?

[Appellant]: We believe she is one of the beneficiaries.

The Court: I mean, you're here as the administrator. Who [are] the other ones?

[Appellant]: The only one we accounted for is [Shaheed] Days, who is her brother.

However, there are other concerns that we have as well. Again, because we took on this without any resources whatsoever, we have not been able to ascertain whether or not there are any other debtors or creditors out there that may also have a claim against the estate. We haven't been able to advertise because, besides the pandemic, we have had no resources to do anything because Ms. Days didn't provide us with any resources. It was a zero estate and the numbers do not add up for the estate either. She failed to account for the money that went out after [Decedent's] death.

So I'm asking for the full quantum, and I believe, as the agent under [POA] and as the accountant, she has the absolute duty to this court to account [in] a proper form where that money went. We have [$140,205.95] that was taken out of Decedent's account in cash, untraceable cash, without any receipt.

The Court: Neither her nor her brother enlisted your services, correct?

[Appellant]: They did not. They were given notice.

\*\*\*

The Court: Based on what I heard, the court will surcharge the [POA] in [the amount of $32,534.28]. In terms of other expenses, there is no evidence that any of the beneficiaries enlisted your services or are in any way responsible, be it Ms. Days or her brother.

- 6 -

***

The Court:        I'm not going to assess the [$140,205.95]. The [$32,534.28 surcharge] will be entered in that there was no defense. And that was the outstanding bill, and what initiated this action was seeking recovery of the [$32,534.28].

Once that is paid, any other amounts that may have been, and not only that, there is no telling, there's been no presentation as to the [$140,205.95], the periods of time it was expended, whether it was necessary or unnecessary, it's too vague and there is insufficient evidence to parse out or to determine. To just say [$140,205.95], we don't know that [Decedent] didn't make gifts or ask to make gifts. We don't know.

[Appellant]:        That is her responsibility, not the administrator's.

***

[Appellant]:        If she took the money and misappropriated it, it's not -- that's –

The Court:        Again, there is no evidence of misappropriation or anything before this Court. And that is not the issue we are dealing with.

Your initial claim is that [Renaissance] had an outstanding balance of [$32,534.28]. Any other monies, there could have been half a million dollars in there. Because [Renaissance] had a debt does not entitle it or you, on their behalf, to recover the entire amount of the bank account that may have been in [Decedent's] name.

*Id.* at 12-19 (unnecessary capitalization omitted).

On February 7, 2023, the orphans' court entered an adjudication and decree that confirmed Days's account, overruled 19 of Appellant's objections for his failure to establish the allegations by a preponderance of the evidence, and imposed a surcharge in the amount of $32,534.28 against Days. Regarding objections 1 and 11, the court ruled as follows:

- 7 -

Objection 1 is SUSTAINED. Objectant objects to the Accountant's failure to account for the entire period of time during which she acted as agent under [POA] and/or had access to and expended the assets and funds of [Decedent], including but not limited to a certain period of time after Decedent's death. The Objection is sustained as Accountant continued to expend funds of Decedent at times not included in the Account after Decedent's time of death.

***

Objection 11 is SUSTAINED. Objectant objects to the Accountant's failure to pay all of Decedent's long-term care and/or medical expenses. The total amount surcharged to the Accountant is $32,534.28. The amount shall be paid to the [estate] as this is the total outstanding balance owed to the facility, [Renaissance], where Decedent was residing and receiving long-term care and medical treatment. *See* Trial Exhibit 0-33. Of the $32,534.28, $9,923.04 was expended after Decedent's date of death, including $7,354.00 for withdraws from a Citizens Bank Account ending in 9658 and $1,569.04 for purchases and charges deducted from a separate Citizens Bank Account ending in 9654. *See* Trial Exhibits 0-24 and 0-26. Accountant and her attorney did not appear at the January 24, 2023 hearing to contest the remaining $22,611.24 due and owing Objectant, [Renaissance].[1] Moreover, Accountant was precluded by Decree dated December 30, 2022 from contesting said charges or from presenting evidence at the time of trial. As these amounts were deducted after the date of death of Decedent, it is clear that Accountant lacked the authority from Principal to make these transactions pursuant to the [POA].

Decree, 2/7/23, at ¶¶ 1, 11 (emphasis omitted).

_____

[1] The court surcharged in the amount of $32,534.28, which is merely the balance owed to Renaissance. It is unclear whether the court intended to surcharge Days for her use of Decedent's funds after her death or why the court seemingly deducted the amount of the post-death withdrawals and charges from the amount owed to Renaissance. Similarly, it is unclear why the court referred to Renaissance as "Objectant," where Appellant was the party to object to the account in his capacity as administrator of the estate.

Appellant timely filed a notice of appeal and a court-ordered concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b), on February 22, 2023 and June 13, 2024,[2] respectively. In response, the Honorable Ramy I. Djerassi[3] filed an opinion, pursuant to Pa.R.A.P. 1925(a), recommending that the matter be reversed and remanded "so that the full amount of the requested surcharge—$140,205.95 with pre-judgment interest—can be properly entered." Orphans' Court Opinion, 12/2/24, at 1.

Appellant raises the following questions for our review:

1. Whether the trial court erred and otherwise abused its discretion by failing (1) to require the Accountant to produce any evidence of expenditures and to prove that her expenditures were for the benefit of her Principal, (2) to hold the Accountant responsible for failing to appear at trial as ordered and not taking an adverse inference against her?

2. Whether the trial court erred and abused its discretion by overruling the Administrator's Objections #2 through #10 and #12 through #21 pertaining to Accountant's failure to list and explain all expenses, dates of expenditures, untraceable cash transactions and self-gifting?

3. Whether the trial court erred and abused its discretion by arbitrarily and capriciously disregarding unrebutted, clear, and convincing documentary exhibits and testimony?

Appellant's Brief, at 4 (formatting altered).

_____

[2] Due to a breakdown in court operations, the orphans' court did not enter an order directing Appellant to file a 1925(b) statement until May 29, 2024.

[3] Successor judge assigned to the matter upon the retirement of the Honorable George W. Overton.

Appellant challenges the findings of the orphans' court, to which we apply a deferential standard of review.

> When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> > As an appellate court we can modify an orphans' court decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion.

*In re Estate of Devoe*, 74 A.3d 264, 267 (Pa. Super. 2013) (citations, quotation marks, and unnecessary capitalization omitted). Moreover, "[o]ur scope of review is also limited: we determine only whether the court's findings are based on competent and credible evidence of record." *In re Estate of Westin*, 874 A.2d 139, 142 (Pa. Super. 2005) (citation omitted).

Because the issues Appellant raises on appeal all concern the orphans' court's confirmation of Days's account and imposition of a surcharge in the amount of $32,534.28, we will address them in tandem. Appellant avers that the orphans' court erred and abused its discretion in failing "to consider the full quantum of the evidence" and "in confirming any part of the [a]ccount" where Days "utterly failed to produce any evidence whatsoever substantiating

any alleged expenditures by her from [Decedent's] funds." Appellant's Brief, at 14, 15 (emphasis omitted). Additionally, Appellant argues the court erred by entering a surcharge of $32,534.28 and, in doing so, "improperly treated the surcharge action as a debt collection action by [Renaissance]." *Id.* at 14, 25.[4] The record supports Appellant's position.

Pursuant to our Code governing Decedents, Estates, and Fiduciaries, an agent appointed under a power of attorney "shall file an account of his administration whenever directed to do so by the court and may file an account at any other time." 20 Pa.C.S.A. § 5610. Orphans' Court Rule 2.1 provides that an account must state "[t]he dates of all receipts, disbursements and distributions, the sources of the receipts, and the persons to whom disbursements and distributions are made and the purpose thereof[.]" Pa.O.C.R. 2.1(b)(1). Moreover, pursuant to Rule 2.5, "[n]o Account shall be confirmed … unless the accountant has given written notice of the filing of the Account" to:

> (1) every unpaid claimant who has given written notice of his or her claim to the accountant[;]
>
> (2) any other individual or entity with an asserted claim known to the accountant that is not shown in the Account or the petition for adjudication/statement of proposed distribution as being either paid in full or to be paid in full;

_____

[4] Days did not file an appellee's brief despite this Court's March 14, 2025 order, which was served on her counsel of record, directing her to do so by April 14, 2025.

(3) any other individual or entity known to the accountant to have a claim or interest in the estate or trust as a beneficiary, heir, or next of kin[.]

Pa.O.C.R. 2.5(a)(1)-(3).

An agent that has accepted appointment as POA owes her principal fiduciary duties to act: (1) in accordance with the principal's reasonable expectations and best interest; (2) in good faith; and (3) within the scope of authority granted in the POA. *See* 20 Pa.C.S.A. § 5601.3(a). Furthermore, an agent has a duty to "[k]eep a record of all receipts, disbursements and transactions made on behalf of the principal" and to disclose receipts, disbursements, or transactions conducted on behalf of the principal pursuant to a court order or by a request from "the personal representative or successor in interest of the principal's estate" upon the death of the principal. 20 Pa.C.S.A. § 5601.3(b)(4), (d). A court may impose a surcharge upon finding a breach of fiduciary duty by an attorney-in-fact.

> Surcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care. Where a fiduciary claims credit for disbursements made by him, the burden rests upon the fiduciary to justify them. Proper vouchers or equivalent proof must be produced in support of such credits. Accountant's unsupported testimony is generally insufficient. Once the fiduciary has validated the disbursements, the burden then shifts to the objector to disprove them.

*In re Estate of Bechtel*, 92 A.3d 833, 839 (Pa. Super. 2014) (brackets and citations omitted) (formatting altered). "Accordingly, the orphans' court must

- 12 -

evaluate the sufficiency of the accountant's testimony and evidence." **Id.** (citation omitted).

Pursuant to the POA granted by the Decedent to Days dated July 2, 2016, which is included in the certified record, Days had the authority, but not the obligation, to pay all bills and debts incurred by the Decedent. Days also had the authority to participate in health care decisions for the Decedent, as permitted in the POA and under 20 Pa.C.S.A. § 5601.3(b)(5). Nonetheless, Days was obligated to act in the Decedent's best interest and for the Decedent's benefit. 20 Pa.C.S.A. § 5601.3(a), (b).

The holder of a POA is not an administrator of an estate. "The statutory definition of 'fiduciary' includes the personal representative, *i.e.,* the administrator, of a decedent's estate." **In re Shahan**, 631 A.2d 1298, 1302 (Pa. Super. 1993) (citing 20 Pa.C.S.A. § 102). An administrator of an estate has the duty to take custody of the Estate and to "preserve and protect the property for distribution to the proper persons within a reasonable time." **Matter of Estate of Campbell**, 692 A.2d 1098, 1101 (Pa. Super. 1997). "In administering the Estate they are considered to be fiduciaries and are to be held to the highest degree of good faith." **Id.**

The court's decision to confirm Days's substantively and procedurally deficient account is contrary to the applicable law and belied by the evidence of record. Days's court-ordered account of her actions as agent did not include the dates of all disbursements and distributions, the persons to whom they

were made, or the purpose for which they were made, in clear violation of Pa.O.C.R. 2.1(b)(1). Moreover, the court incorrectly stated in its adjudication that "notice of the Audit [had] been given to all parties having a possible interest in the Estate." Adjudication, 2/7/23, at 5. Appellant was the only party included on the certificate of service, despite uncontradicted evidence establishing the existence of at least one unpaid claimant, Renaissance, and one other known beneficiary, Shaheed Days, with an interest in the estate. Pa.O.C.R. 2.5(a)(1)-(3).[5]

Furthermore, Days failed to appear at trial, and consequently, did not present any testimony or evidence to substantiate her account or to refute Appellant's objections, and the court's December 30th decree precluded her from presenting any evidence or offering a defense. Nevertheless, the court inexplicably confirmed Days's unsubstantiated account, disregarded Appellant's unrebutted exhibits and testimony, and overruled 19 of Appellant's objections. We are constrained to find the court's decision was based on an error of law, was an abuse of discretion, and was unsupported by the evidence of record. **See Devoe**, 74 A.3d at 267.

Moreover, we find no legal or evidentiary support for the court's decision to limit the amount surcharged to $32,534.28. To establish grounds for

---

[5] The record indicates that Days and her brother, Shaheed Days, are heirs-at-law of the Estate, but whether they are the only heirs is unclear from the record.

surcharge, Appellant was required to show that Days failed to satisfy the fiduciary duties she owed Decedent as agent under POA. *See Bechtel*, 92 A.3d at 839. Here, the court failed to acknowledge that the uncontradicted evidence of record clearly established Days had breached her duties to disclose receipts, disbursements, or transactions upon both Appellant's request and the court's order. 20 Pa.C.S.A. § 5601.3(d). Furthermore, as the successor court succinctly explained in its 1925(a) opinion:

> This court infers from [Days's] failure to account and appear at trial, and her failure to maintain source materials in support of receipts, disbursements, and distributions—that she gifted [herself $140,205.95]. Under this finding, Days would be liable for the damage caused to the [estate] and must be surcharged for this sum.

Orphans' Court Opinion, 12/2/24, at 12. We agree.

The orphans' court seemed to imply it could not surcharge Days in the requested amount of $140,205.95 because the unexplained bank account transactions could have been gifts made at Decedent's request. *See* N.T. Trial, 1/24/23, at 17. While our review of the record confirmed that the POA granted Days the authority to make unlimited gifts, Days never attempted to explain the transactions, and she did not assert her gift-giving authority to refute Appellant's objections at any point in the proceedings. *See* POA, 7/20/16, at ¶ 3; *In re Estate of Moskowitz*, 115 A.3d 372, 386 (Pa. Super. 2015) ("An agent cannot make any gift under [POA] unless the [POA] specifically states the agent is authorized to do so.") (citation omitted). Rather, in her petition for adjudication, Days indicated she made no gifts under the POA. *See* Petition

- 15 -

for Adjudication, 6/10/22, at 3. Notably, the court acknowledged in its adjudication that, at trial, "no evidence was submitted to show where [Days's] transactions were made with the authorization of [Decedent] pursuant to the [POA]" because both Days and her counsel failed to appear at trial. Adjudication, 2/7/23, at 5 n.1. Accordingly, there was no evidentiary basis that would permit the court to consider such possibility in reaching its decision to limit the amount surcharged, particularly where the evidence of record pointed to the contrary. Moreover,

> [inasmuch] as the record suggests the trial court on its own questioned the standing of [Appellant] to bring this case, [Pennsylvania courts have] consistently held that a court is prohibited from *sua sponte* raising the issue of standing. [**See In re Nomination Petition of deYoung**, 903 A.2d 1164, 1168 (Pa. 2006); **see also U.S. Bank, N.A. v. Pautenis,** 118 A.3d 386, 393 n.8 (Pa. Super. 2015)]. In any event, [Appellant] was appointed [administrator of the estate] with no objection by a party-in-interest. Accordingly, [Appellant] has standing to bring his petition for accounting and surcharge.

Orphans' Court Opinion, 12/2/24, at 11 (unnecessary capitalization omitted).

The orphans' court's decision to confirm the account and impose a surcharge limited to the amount of $32,534.28[6] lacked evidentiary or legal support in light of the clear, uncontested evidence presented by Appellant, in his capacity as Administrator, that Days, *inter alia*, withdrew funds from Decedent's bank accounts in the 5 months following her death, until the

_____

[6] As stated above, it is uncontroverted that Decedent's account at Renaissance was left unpaid in the amount of $32,534.28.

account balances were entirely depleted. Based on our review of the record, we commend the comprehensive and well-written Opinion of the Honorable Ramy I. Djerassi dated December 2, 2024, disagreeing with the decision of the original judge assigned to this case, and furthermore, we are constrained to find that the orphans' court abused its discretion and committed an error of law. Accordingly, we reverse the orphans' court's decree and remand for the reconsideration of the proper surcharge amount in accordance with this Opinion.

Decree reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/1/2025