J-A22019-14

2015 PA Super 10

| IN RE: BETTY J. FIEDLER | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E. O'REAN FIEDLER | : | No. 2264 MDA 2013 |

Appeal from the Order Entered December 4, 2013,
In the Court of Common Pleas of Lancaster County,
Orphans' Court Division, at No. 36-2010-1237.

| IN RE: BETTY J. FIEDLER | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: LATISHA BITTS | : | No. 35 MDA 2014 |

Appeal from the Order Entered December 4, 2013,
In the Court of Common Pleas of Lancaster County,
Orphans' Court Division, at No. 36-2010-1237.

BEFORE: PANELLA, SHOGAN and FITZGERALD*, JJ.

OPINION BY SHOGAN, J.:                    **FILED JANUARY 16, 2015**

This is an appeal from the Adjudication of Account ("Account") by E. O'Rean Fiedler ("O'Rean") and a cross-appeal by Latisha Bitts ("Latisha"). We affirm in part and reverse in part.

Betty Fiedler ("Decedent") had two daughters, O'Rean, the objector to the Account, and Latisha, who were sole, equal beneficiaries under Decedent's will. O'Rean has no children; Latisha has a biological son, Adam Buckius ("Adam") and a step-son, Sean Bitts ("Sean"), and two grandchildren.

_____
*Former Justice specially assigned to the Superior Court.

Decedent resided at St. Anne's Retirement Community from July 2005 until her death on September 10, 2009. N.T., 1/7/13, at 65, 128. All of Decedent's assets were contained in an Ameriprise account ("Ameriprise Account"), which was established prior to 2006, with an original principal balance of $709,953.00. The Ameriprise Account was titled to Decedent as a "TOD" or "transfer on death" account; both O'Rean and Latisha were named as beneficiaries of the Ameriprise Account. N.T., 1/7/13, at 56. On February 17, 2004, Decedent had designated both of her daughters as her agents pursuant to a power of attorney ("POA"). *Id*. at 57–58. Both Latisha and O'Rean testified that under the POA, O'Rean paid all of Decedent's bills, managed her affairs, and "was more involved" with Decedent than Latisha. *Id*. at 86–87, 94, 132. O'Rean signed checks that paid Decedent's bills. She did not sign gift checks to Latisha or herself, testifying that it was inappropriate to gift herself or her sister money from her mother. *Id*. at 86; N.T., 1/9/13, at 243.

O'Rean testified that in July 2006, Decedent told her that Latisha wanted Decedent to gift Latisha and O'Rean $10,000. N.T., 1/9/13, at 245. O'Rean was opposed to the action because Decedent had already gifted them over $12,000 each in personal property when Decedent sold her house that year. Nevertheless, O'Rean wrote a check to herself dated July 5, 2006, in the amount of $10,000, which was signed by Decedent, and an

identical check to Latisha, also signed by Decedent, at Decedent's direction. *Id*. at 88–89. Similarly, O'Rean wrote a $10,000 check to Adam at Decedent's direction, which O'Rean signed. *Id*. at 96. On the memo line of the check was the word, "Final." *Id*. at 146. Latisha testified that her son telephoned O'Rean for an explanation of the memo line, and her response was that Decedent had told her "this would be the last check." *Id*. at 146. Upon hearing that, Latisha visited Decedent and inquired about O'Rean's response to Adam; Decedent allegedly denied saying the check was to be Adam's last check. *Id*. Less than two months later, Latisha asked Gregory Nauman, Decedent's financial advisor, to change the mailing address of Decedent's Ameriprise Account statements from O'Rean to Latisha. *Id*. at 17, 146–147. O'Rean visited her mother on September 29, 2006, and asked why the Ameriprise Account statements had been changed to Latisha's address. Decedent refused to discuss the change, and asked O'Rean to leave her room. *Id*. at 82–83. That was the last time O'Rean and Decedent spoke. *Id*. at 82. One month later, on October 11, 2006, Decedent revoked the POA naming both daughters as agents and executed a new POA designating Latisha as her sole agent. *Id*. at 44, 146.

Latisha agreed that "as soon as [she] became the agent under the subsequent power of attorney signed in 2006, gifts started to be made." *Id*. at 151–152. During the period in which Latisha was named as sole agent

under the POA, she signed and wrote checks made payable to herself, her sons, and their wives, including Appellees Adam, Adam's then-wife, Kimberly Buckius, Sean, and Sean's wife, Christy Bitts (collectively, Additional Respondents) that totaled $480,515.00.[1]  N.T., 1/7/13, at 113–123; N.T., 1/9/13, at 181–182, 186–189, 191–196.  Decedent's expenses at St. Anne's Retirement Community totaled $239,758.86.  Account, 6/15/10, Summary at unnumbered page 2.  The Account listed the "combined balance on hand" as $0.00 *Id*.

Included in the checks that Latisha signed as POA was a check to her son, Adam, in the amount of $330,000.00.  Both Latisha and Mr. Nauman testified that Latisha contacted him about the "large gift to Adam."  N.T., 1/9/13, at 245; N.T., 1/7/13, at 46.  Indeed, Mr. Nauman testified, "My understanding was that Latisha Bitts wanted to make a gift to Adam.  That is what I was told."  N.T., 1/7/13, at 47.

Latisha maintained that she did not exercise discretionary power in making any gifts as POA and that the checks she wrote were at Decedent's direction.  N.T., 1/7/13, at 112–128.  Conversely, O'Rean characterized the checks as gifts of money made by Latisha pursuant to the POA.  Petition to Show Cause, 4/9/10, at 2.

---

[1]  Latisha also wrote checks to Adam's daughters, Lydia and Emma Buckius. Account, 6/15/10, at 3, Addendum to ¶ 6.

Procedurally, the instant matter began on April 9, 2010, when O'Rean filed a petition directing Latisha to show cause why she should not file an Account with respect to the POA.[2] Latisha filed an answer on May 13, 2010, in which she objected to filing the Account. Following oral argument on the issue, the orphans' court ordered the Account to be filed. Latisha filed a petition for reconsideration on May 26, 2010. Latisha ultimately filed the Account on June 15, 2010, for the period from October 11, 2006, through November 27, 2009, identifying the category of "gifts"[3] that totaled $480,515.00. Account, 6/15/10, Summary at unnumbered 2. As noted, the Account listed the balance on hand as $0.00. *Id*.

O'Rean filed objections to the Account on June 23, 2010, and the Account was called for audit on July 6, 2010. On August 4, 2010, O'Rean filed a petition to show cause why Latisha and Additional Respondents should not be required to return the gifts they received from Decedent. That day, the orphans' court issued a citation to show cause why Adam and Kim

---

[2] Latisha had offered the last will and testament of Decedent into probate and, as executrix of the estate, averred that there were no probate assets. Petition to Show Cause, 4/9/10, at 1; Petition for Reconsideration, 5/26/10, at ¶ B.

[3] As the orphans' court noted, the Account filed by Latisha grouped the monetary transfers together into one category entitled "gifts." Orphans' Court Opinion, 12/4/13, at 2 n.1. While we adopt this nomenclature to describe the checks in question for ease of reference, their categorization as "gifts" was at issue below. As the orphans' court stated, "It is apparent that the real question in the instant action is who gave these 'gifts' and whether they were indeed valid gifts." *Id*.

Buckius and Sean and Christy Bitts should not be deemed additional respondents. Latisha and Additional Respondents filed an answer and new matter to the petition to show cause on September 9, 2010. On September 29, 2010, O'Rean filed preliminary objections to the answer, and Latisha filed an amended answer on October 19, 2010. O'Rean then filed preliminary objections to the amended answer, which the orphans' court denied on January 27, 2011.

Thereafter, O'Rean filed a motion for partial judgment on the pleadings on March 16, 2011, seeking the return to the estate of $360,000 in gifts to Latisha and Adam. The orphans' court denied the motion on August 31, 2011. By separate order that same date, the orphans' court ruled upon O'Rean's August 4, 2010 citation to show cause why Adam and Kim Buckius and Sean and Christy Bitts should not be deemed additional respondents, and added them to the lawsuit.

On June 22, 2012, O'Rean filed a motion *in limine* seeking to preclude any testimony, on relevance grounds, regarding Decedent's verbalized intent prior to her death. The orphans' court denied the motion *in limine* on September 12, 2012.

A two-day hearing was held on January 7 and 9, 2013. At the start of the January 7, 2013 hearing, all counsel entered a stipulation, which in part, set forth the name of each recipient of the funds in dispute, the amount of

funds transferred to each recipient, and whether the amount transferred was in excess of the amount that could be excluded from taxable gifts under the Internal Revenue Code.  N.T., 1/7/13, at 7–10.  In pertinent part, that stipulation provided:

> AND NOW THIS 7th day of January, 2013, counsel of record hereby stipulate[] and agree[] to the following:
>
> * * *
>
> 2.   The transfer of $12,000 to Christy Bitts on December 23, 2006 was not in excess of the amount which could be excluded from taxable gifts by Sections 2503(b) or 2503(e) of the Internal Revenue Code, including exclusions available through the use of Section 2513 of the [I]nternal Revenue Code ("annual exclusion amount").
>
> 3.   The transfer of $12,000 to Christy Bitts on December 16, 2007 was not in excess of the annual exclusion amount.
>
> 4.  The transfer of $12,000 to Latisha Bitts during 2007 was not in excess of the annual exclusion amount.
>
> 5.  The transfer of $100 to Latisha Bitts on December 30, 2008 was not in excess of the annual exclusion amount.
>
> 6.  The transfer of $12,000 to Sean Bitts on December 23, 2006 was not in excess of the annual exclusion amount.
>
> 7.  The transfer of $12,000 to Sean Bitts on December 16, 2007 was not in excess of the annual exclusion amount.
>
> 8.  The transfer of $12,000 to Adam Buckius on January 1, 2007 was not in excess of the annual exclusion amount.
>
> 9.  The transfer of $12,000 to Adam Buckius on January 1, 2008 was not in excess of the annual exclusion amount.

10. The transfer of $12,000 to Kim Buckius on December 23, 2006 was not in excess of the annual exclusion amount.

11. The transfer of $12,000 to Kim Buckius on August 20, 2007 was not in excess of the annual exclusion amount.

12. The transfer of $12,000 to Kim Buckius on January 1, 2008 was not in excess of the annual exclusion amount.

13. The transfer of $106.50 to Lydia was not in excess of the annual exclusion amount.

14. The transfer of $108.50 to Emma was not in excess of the annual exclusion amount.

15. Betty J. Fiedler was a resident of St. Anne's Retirement Community from July, 2005 until the time of her death on October 11, 2009.[4]

16. Latisha Bitts received gifts of $25,200 during 2007 in excess of the annual gift tax exclusion.

17. Adam Buckius received gifts of $335,000 during 2008 in excess of the annual gift tax exclusion.

Stipulation, 1/7/13, at unnumbered 1–2.

On December 4, 2013, the orphans' court entered its adjudication confirming the Account with the exception of two gifts Latisha made to herself totaling $25,200.00 and to post-death funeral expenses in the amount of $7,674.00. The orphans' court determined that all of the gifts that were within the annual IRS exclusion amount were valid and

---

[4] Elsewhere in the record, the date of death was described as September 10, 2009. *See e.g.*, N.T., 1/7/13, at 128. The orphans' court, as well, utilized September 10, 2009, as the date of death. Orphans' Court Opinion, 12/4/13, at 1.

-8-

permissible; thus, the gifts to Additional Respondents were deemed valid gifts pursuant to the POA. The orphans' court also concluded that gifts of $335,000.00 to Adam, which were not within the annual exclusion amount, nevertheless were valid because they were supported by independent testimony that they were not made pursuant to the POA but were valid *inter vivos* gifts from Decedent. The orphans' court surcharged[5] Latisha $25,200.00 plus $7,674.00, for a total of $32,874.00.

O'Rean filed a notice of appeal on December 23, 2013, and Latisha filed a cross-appeal on December 31, 2013. All parties and the orphans' court complied with Pa.R.A.P. 1925. This Court consolidated the appeals on February 6, 2014.

O'Rean's appeal docketed at 2264 MDA 2013 raises the following two issues:

> A. Whether the orphans' court erred in failing to grant all of O'Rean Fiedler's objections to the account based on the documentary evidence she presented and the stipulations of counsel, and in allowing and considering certain testimonial evidence?
>
> B. Whether, even assuming arguendo that the orphans' court did not err in failing to grant all of O'Rean Fiedler's objections to the account based on the documentary evidence she presented and the stipulations of counsel, and in allowing and considering

---

[5] "Surcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care." **In re Estate of Bechtel**, 92 A.3d 833, 839 (Pa. Super. 2014) (citing **In re Miller's Estate**, 26 A.2d 320, 321 (Pa. 1942)).

certain testimonial evidence, the orphans' court erred in finding the testimonial evidence supported the [Latisha's] gift making activities?

O'Rean's Brief at 3.

Latisha's cross-appeal docketed at 35 MDA 2014 raises the following two issues:

1.  Should [O'Rean's] demand for surcharge of Latisha Bitts for $7,674.00 for payment of Decedent's funeral expenses be denied when [O'Rean] withdrew her objection to payment of the funeral expenses from Latisha's account, failed to meet her burden in proving the payment was improper, and Latisha was a beneficiary of the account and therefore had authority to write checks from the account?

2.  Should [O'Rean's] demand for surcharge of Latisha Bitts in the amount of $25,200.00 for gifts be denied when Adam Buckius and Latisha Bitts were both competent witnesses whose testimony proved the validity of the gifts and [O'Rean] offered no and/or insufficient evidence to invalidate the gifts?

Latisha's Brief at 3.  We will address the issues, in that they all relate to the validity of the gifts, as a whole.

Our standard of review is as follows:

Our standard of review of the findings of an Orphans' Court is deferential.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will

> not reverse its credibility determinations absent an abuse of that discretion.
>
> However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> *In re Estate of Harrison*, 745 A.2d 676, 678–79 (Pa. Super. 2000), *appeal denied*, 563 Pa. 646, 758 A.2d 1200 (2000) (internal citations and quotation marks omitted). "The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa. Super. 2003), *appeal denied*, 577 Pa. 722, 847 A.2d 1287 (2003).

*In re Estate of Whitley* 50 A.3d 203, 206–207 (Pa. Super. 2012).

This Court's standard of review of questions of law is *de novo* and the scope of review is plenary, as we may review the entire record in making our determination. *Kripp v. Kripp*, 849 A.2d 1159, 1164 n.5 (Pa. 2004). When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law. *Kmonk-Sullivan v. State Farm Mutual Automobile Ins. Co.*, 746 A.2d 1118, 1120 (Pa. Super. 1999) (*en banc*).

In its December 4, 2013 decision, the orphans' court listed and grouped the checks by payee that Latisha wrote and signed, as follows:

Christy Bitts:      $12,000.00 on December 23, 2006.
Christy Bitts:      $12,000.00 on December 16, 2007.

Latisha Bitts:      $25,100.00 on January 1, 2007.
Latisha Bitts:      $100.00 on December 11, 2007.
Latisha Bitts:      $12,000.00 on December 17, 2007.
Latisha Bitts:      $100.00 on December 30, 2008.

| | |
|---|---|
| Sean Bitts: | $12,000.00 on December 23, 2006. |
| Sean Bitts: | $12,000.00 on December 16, 2007. |
| | |
| Adam Buckius: | $12,000.00 on January 1, 2007. |
| Adam Buckius: | $12,000.00 on January 1, 2008. |
| Adam Buckius: | $5,000.00 on April 29, 2008. |
| Adam Buckius: | $330,000.00 on October 1, 2008. |
| | |
| Kim Buckius: | $12,000.00 on December 23, 2006. |
| Kim Buckius: | $12,000.00 on August 20, 2007. |
| Kim Buckius: | $12,000.00 on January 1, 2008. |
| | |
| Lydia Buckius: | Birthday gift of $50.00 undated. |
| | Christmas gift of $56.50 undated. |
| | |
| Emma Buckius: | Birthday gift of $52.00 undated. |
| | Christmas gift of $56.50 undated. |

Orphans' Court Opinion, 12/4/13, at 3–4.

The Pennsylvania legislature set forth special rules for empowering an agent to make a gift through a power of attorney in 1999 when it added 20 Pa.C.S. § 5601.2, Special rules for gifts, to the Decedents, Estates and Fiduciaries Code[6] ("Code"); *see also* 1999 Pa. Laws 39. In relevant part, section 5601.2 provides as follows:

**§ 5601.2. Special rules for gifts**

**(a) General rule.**--A principal may empower an agent to make a gift in a power of attorney **only as provided in this section**.

---

[6] Act 1974, Dec. 10, P.L. 816, No. 271, § 5, imd. effective, substituted "Decedents, Estates and Fiduciaries" for "Probate, Estates and Fiduciaries Code."

**(b) Limited gifts.**--A principal may authorize an agent to make a limited gift as defined under section 5603(a)(2) (relating to implementation of power of attorney) by the inclusion of:

(1) the language quoted in section 5602(a)(1)[7] (relating to form of power of attorney); or

(2) other language showing a similar intent on the part of the principal to empower the agent to make a limited gift.

**(c) Unlimited gifts.**--A principal may authorize an agent to make any other gift only by specifically providing for and defining the agent's authority in the power of attorney.

* * *

**(e) Equity.**--An agent and the donee of a gift shall be liable as equity and justice may require to the extent that, as determined by the court, a gift made by the agent is inconsistent with prudent estate planning or financial management for the principal or with the known or probable intent of the principal with respect to disposition of the estate.

20 Pa.C.S. § 5601.2 (emphasis added in subpart (a)).[8]

Section 5603 of the Code, Act of June 30, 1972, P.L. 508, No. 164, § 2 (as amended 20 Pa.C.S. §§ 101–8815), describes, *inter alia*, an agent's power to make limited gifts, in relevant part, as follows:

**§ 5603. Implementation of power of attorney**

**(a) Power to make limited gifts.—**

---

[7]  20 Pa.C.S. § 5602(a)(1) delineates the power "[t]o make limited gifts."

[8]  Pursuant to 2014, July 2, P.L. 855, No. 95, § 220 Pa.C.S., 20 Pa.C.S. § 5601.2 is repealed effective Jan. 1, 2015, and the "amendment, addition or repeal of 20 Pa.C.S . . . § 5601.2 . . . applies only to powers of attorney created on or after the effective dates of those provisions."

* * *

(2) A power "to make limited gifts" shall mean that the agent may make only gifts for or on behalf of the principal which are limited as follows:

(i) The class of permissible donees under this paragraph shall consist solely of the principal's spouse, issue and a spouse of the principal's issue (including the agent if a member of any such class), or any of them.

(ii) **During each calendar year**, the gifts made to any permissible donee, pursuant to such power, shall have an aggregate value **not in excess of**, and shall be made in such manner as to qualify in their entirety for, **the annual exclusion from the Federal gift tax** permitted under section 2503(b) of the Internal Revenue Code of 1986 (Public Law 99-514, 26 U.S.C. § 1 et seq.) for the principal and, if applicable, the principal's spouse.

20 Pa.C.S. § 5603 (emphasis added to subpart (a)(2)(ii)).[9] Thus, authorized gifts to qualified individuals cannot exceed that calendar year's annual gift tax exclusion amount.

We must examine the relevant language of the instant POA document. A power of attorney is "an instrument granting someone authority to act as agent or attorney-in-fact for the grantor." BLACK'S LAW DICTIONARY at 1209 (8th ed. 2004). An attorney-in-fact is someone "who is designated to

---

[9] Although not relevant here, new legislation encompassing an agent's power to make limited gifts will be added effective January 1, 2015. 20 Pa.C.S. § 5603(a.1); 30 Standard Pennsylvania Practice 2d § 143:28 (footnotes omitted).

transact business for another; a legal agent." ***Id***. at 138; ***see also*** 20 Pa.C.S. § 5601(f) (defining the term "agent" as a "person designated by a principal in a power of attorney to act on behalf of that principal"). The POA document signed by Decedent defined the type of limited gifts Latisha was authorized to make, as follows:

**SPECIFIC ADDITIONAL POWERS INCLUDED IN GENERAL POWER**

* * *

3. <u>Power Concerning Gifts</u>.

**To make limited gifts, as defined in Chapter 56 of the Pennsylvania Probate, Estates and Fiduciaries Code.** In addition, to make gifts to, or for the benefit of, any donee who has been the recipient of gifts from me or whom my attorney reasonably considers to be the natural object of my bounty. All gifts made under this Section 3. shall be gifts which can be excluded from taxable gifts by Sections 2503(b) or 2503(e) of the Internal Revenue Code, including exclusions available through the use of Section 2513 of the Internal Revenue Code.

General Power of Attorney, 10/11/06, at 4 (emphasis added to ¶ 3); O'Rean's Exhibit 2; Petition to Show Cause, 4/9/10, Exhibit A at 4.

O'Rean assails the orphans' court decision upholding Latisha's gifts to herself and Additional Respondents. Referencing the Code and the POA document, O'Rean asserts that if the orphans' court had followed the applicable statutory language and the clear, unambiguous limited gifting language in the POA, in conjunction with the stipulations of counsel, it would have disallowed the two 2008 gifts to Adam totaling $335,000.00 and

ordered them to be returned to Decedent's estate because they exceeded the $12,000.00 IRS annual exclusion amount. We agree.[10]

Referencing the language of the POA document, O'Rean also argues that the individual gifts to Kim Buckius, Sean, and Christy Bitts were not allowable because there was no evidence that these individuals had received gifts from Decedent prior to the effective date of the POA, and no evidence that they reasonably could have been considered by Latisha to be the natural objects of Decedent's bounty "since [Additional Respondents] were not directly related to [Decedent] and were not beneficiaries in any capacity under [Decedent's] will." O'Rean's Brief at 20. We disagree.

---

[10] Due to our disposition, we need not address O'Rean's argument that the orphans' court erred in considering testimonial evidence concerning Decedent's donative intent in allowing the gifts to Adam. **Peterson v. Shreiner**, 822 A.2d 833, 836 (Pa. Super. 2003) (When reversing lower court, we need only address reversal issue since we are reversing on that basis). Moreover, even if we would consider this claim, Gregory Nauman's testimony, which is assailed by O'Rean as it related to the gift to Adam, O'Rean's Brief at 23, did not support the orphans' court's conclusion that Decedent intended to make an *inter vivos* gift to Adam. As noted *supra*, Mr. Nauman testified, "My understanding was that **Latisha Bitts wanted to make a gift to Adam**. That is what I was told." N.T., 1/7/13, at 47 (emphasis added). Further, O'Rean's reliance on **Estate of Slomski v. Thermoclad**, 956 A.2d 438, 444 (Pa. Super. 2008), *reversed on other grounds*, 987 A.2d 141 (Pa. 2009), is misplaced. **Slomski** did not address the issue of whether a power of attorney authorized the agent to make gifts on behalf of the principal or whether the principal ratified an agent's conduct in making such gifts. Instead, at issue before this Court was a dispute over leasehold property and whether a power of attorney gave the agent the power to grant a right of first refusal in a lease or whether the principal ratified the agent's conduct in granting such a right.

As noted, Chapter 56 of the Code addresses powers of attorney and was amended in 1999 to include the addition of § 5601.2, Special rules for gifts. Under the special rules for gifts, a principal may authorize an agent to make a limited gift as defined under section 5603(a)(2). "A limited gift, by statutory definition, is **one made to a restricted class of permissible donees for a value limited to the annual exclusion from the federal gift tax permitted under the Internal Revenue Code**." *Metcalf v. Pesock*, 885 A.2d 539, 541 (Pa. Super. 2005) (citing 20 Pa.C.S. § 5603(a)(2)) (emphasis added). Clearly, limited gifts are narrowly defined regarding class and value within the statute. Here, Latisha—not Decedent herself—signed each one of the gift checks. Moreover, Latisha signed each of the gift checks as Decedent's POA; otherwise, Latisha had no power or authority to sign them. Under the applicable power of attorney document, however, Latisha's power to make such gifts was circumscribed in amount by the IRS, pursuant to the clear language of the relevant statutory provisions. Thus, the only question validly before the orphans' court was whether the checks Latisha signed were within the authority of the power of attorney and whether they complied with the applicable statutory provisions.

The scope of authority under a POA is determined by the language of the document creating the agency and the Code. *See generally* 20 Pa.C.S. §§ 5601-5611; *In re Weidner*, 938 A.2d 354, 357–358 (Pa. 2007)

(analyzing language of POA in the context of the Code to determine propriety of agent's actions). The POA signed by Decedent requires that the agent "must use due care to act for your benefit and in accordance with this power of attorney." General Power of Attorney, 10/11/06, at 1 (Notice); O'Rean's Exhibit 2; Petition to Show Cause, 4/9/10, Exhibit A at 1. In the "Oath of Agent of a Power of Attorney," Latisha agreed to "exercise reasonable caution and prudence." General Power of Attorney, 10/11/06, at 6; O'Rean's Exhibitibit 2; Petition to Show Cause, 4/9/10, Exhibit A at 6. Moreover, the POA is the operative document that controls the outcome of this dispute. As O'Rean asserted, it is axiomatic that in signing the gift checks, Latisha was acting either as a principal or as an agent. As there is no evidence in the record suggesting that Latisha was a principal, such as being a co-owner of Decedent's Ameriprise account, she had to have been an agent, thereby subject to the POA and the relevant Pennsylvania statutes. O'Rean's Brief at 26.

This Court has construed 20 Pa.C.S. § 5601.2(a) narrowly. *Metcalf*, 885 A.2d 539; *see also Barnett v. U.S.*, 2009 WL 2426246 (W.D.Pa. 2009) (not published in F.Supp.2d). The stated purpose underlying section 5601.2 is to address the proper manner in which a principal may authorize an agent to make a gift under a power of attorney. 20 Pa.C.S. § 5601.2, Comment. The statute clearly provides that the power of an agent to make a gift as a

power of attorney can only occur "as provided in this section [e.g., Section 5601.2]." 20 Pa.C.S. § 5601.2(a). Moreover, "powers of attorney are to be strictly construed." **Estate of Slomski v. Thermoclad**, 956 A.2d 438, 444 (Pa. Super. 2008), *reversed on other grounds*, 987 A.2d 141 (Pa. 2009) (quoting **In re Estate of Cambest**, 756 A.2d 45, 52 (Pa. Super. 2000)).

There can be no dispute that Latisha executed each one of the gift checks. It also is clear that Latisha signed each of the gift checks as Decedent's POA. As the orphans' court concluded, the checks listed in the stipulation that are within the IRS annual exclusion amount were valid gifts pursuant to Latisha's authority as Decedent's power of attorney.

O'Rean's argument, that the yearly checks to Decedent's grandchild, step-grandchild, their spouses, and the two checks to her great-grandchildren were not authorized by the gifting language of the POA document, is not supported in the record. O'Rean's claim is based on her contention that because there was no testimony that Decedent had made gifts to those individuals in the past, and they were not named beneficiaries in Decedent's will, "it was completely unreasonable for [Latisha] to have considered them as natural objects of [Decedent's] bounty." O'Rean's Brief at 33.

O'Rean fails to provide any statutory or case law in support of such a claim. The gift recipients' inclusion in Decedent's will is not controlling.

Moreover, even if O'Rean's "theory" were supportable, it is not based in fact. Decedent's will provided that if O'Rean did not survive Decedent, "O'Rean's share shall pass to [Latisha], or if she is not then living, to her then living issue, per *stirpes*." Will of Betty J. Fiedler, 10/11/06, at 1, O'Rean's Exhibit 3; N.T., 1/7/13, at 10. The will further provided that if Latisha did not survive her mother by thirty days, Latisha's share would pass to Latisha's issue, per *stirpes*, not to O'Rean, unless Latisha had no living issue *Id*. Clearly, Decedent's inclusion of Latisha's issue as secondary beneficiaries is indicative of the value Decedent placed on those relationships. It was not unreasonable for Latisha to draw an inference that Decedent similarly valued the relationships with her grandchildren's parents. Moreover, there was testimony that there was a course of conduct at Christmas when the family would receive gift checks from Decedent. N.T., 1/7/13, at 114. Finally, O'Rean herself testified that she wrote a gift check to Adam in July 2006 at Decedent's direction, thus lending support to the implication that Decedent was interested in passing on her bounty. *Id*. at 89–90.

We have no hesitation in concluding, as did the orphans' court, that Latisha fairly and reasonably could have determined that Additional Respondents reasonably could be considered "the natural object of [Decedent's] bounty." General Power of Attorney, 10/11/06, at 4; O'Rean's Exhibit 2; Petition to Show Cause, 4/9/10, Exhibit A at 4. Following our

complete review of the record, we agree with the orphans' court that "Sean Bitts, Christy Bitts, Adam Buckius, Kim Buckius, Lydia and Emma as well as [Latisha] herself, were the natural object of Decedent's bounty and could be recipients of limited gifts under the power of attorney."  Orphans' Court Opinion, 12/4/13, at 7.

Regarding the gifts to Adam that exceeded the annual exclusion amount, however, the orphans' court completely ignored the language of the POA document.  The orphans' court upheld the $5,000.00 check to Adam in 2008 as a valid gift, despite acknowledging that the stipulation of counsel identified it as in excess of the annual gift tax exclusion.  The court's reliance on Latisha's self-serving testimony that "Decedent directed her to write the check to Adam," Orphans' Court Opinion, 12/4/13, at 16, does not elevate the gift outside of the parameter of the limited gift-giving power of the POA document, nor eliminate the applicability of the special rules for gifts as set forth in 20 Pa.C.S. § 5601.2.  Because the stipulation and testimony established that Latisha had gifted Adam $12,000 on January 1, 2008, the $5,000.00 check was in excess of the annual gift tax exclusion and is subject to return.

The same is true of the $330,000.00 gift to Adam in 2008.  In upholding the gift, the orphans' court supported its decision with its determination that "[s]ince Decedent delivered[, *i.e.*, handed out, this]

gift[], Latisha was not acting under her authority outlined in the Power of Attorney." Orphans' Court Opinion, 12/4/13, at 17. That reasoning is unsupported both by the orphans' court and the record. The consistent testimony was that Decedent handed out the gift checks to everyone, not just to Adam. N.T., 1/7/13, at 113–117; N.T., 1/9/13, at 182–183, 186–189. The decisive point, however, is that it was a check signed by Latisha as Decedent's POA, and it did not comply with the gifting authority of the POA because the gift exceeded the annual IRS exclusion amount. The orphans' court also concluded, without any support, that the gift was not subject to analysis under 20 Pa.C.S. § 5601.2. Orphans' Court Opinion, 12/4/13, at 17. The orphans' court clearly and properly utilized the POA document and 20 Pa.C.S. § 5601.2 to uphold the gifts within the annual exclusion amount that related to Additional Respondents, but then erroneously ignored the very same POA and statutory provisions regarding the 2008 gift to Adam.

Latisha offered testimony that Decedent intended to gift Adam $330,000 because her mother "wanted to help [Adam] buy a house or buy a house for [him]." N.T., 1/7/13, at 124. There are several problems with this testimony. It does not clearly state Decedent's intent to give a gift to Adam; rather, it is a self-serving statement by Latisha, and there is other third-party testimony to the contrary. According to Gregory Nauman, his

"understanding was that **Latisha Bitts** wanted to make a gift to Adam. That is what I was told." N.T., 1/7/13, at 47 (emphasis added).

Moreover, the method of withdrawing the funds from the Ameriprise account was unconventional. Mr. Nauman testified that in generating the Ameriprise form for cash withdrawal for the purpose of making the gift to Adam, he filled out the form before taking it to Decedent **based on direction from Latisha**. N.T., 1/7/13, at 20. Mr. Nauman testified, "I was told probably by [Latisha] that she wanted to make a withdrawal, make a gift. So I had the form ready when I went to see [Decedent]." N.T., 1/7/13, at 48–49. His testimony was consistent: "[Latisha] called [him] and told [him] that there should be a liquidation done in order to have a check sent or given to [Adam]." *Id*. at 54. Moreover, Mr. Nauman testified that on the Ameriprise Redemption Form, he checked the "No" box in answer to the question, "[I]s this transaction based on a recommendation by an Ameriprise Financial advisor." *Id*. at 37–38. He opined that the transaction should have been handled differently. *Id*. at 52, 59.

There is nothing about the gifts to Adam to differentiate them from any of the other gift checks written and signed by Latisha. As such, the $330,000.00 check and the $5,000.00 check were subject to the authority of the POA and the statutory requirements of the Code. They are beyond the

annual gift tax exclusion, as evidenced by counsels' stipulation; thus, they are not valid.

Next, Latisha assails the orphans' court surcharge to her of $25,200, which represented two checks Latisha wrote to herself in 2007, one for $25,100 and one for $100. The orphans' court correctly concluded that since Latisha previously wrote a check to herself for $12,000 in 2007, which was within "the limited gifting power outlined in Decedent's Power of Attorney," the other gifts were "not valid." Orphans' Court Opinion, 12/4/13, at 17. There is nothing in the record that can validly remove these two checks from the applicable language of the POA document and the relevant statutes. The same reasoning applicable to the $335,000.00 in gifts to Adam, applies to the $25,200.00 in checks to Latisha.

Finally, Latisha challenges the orphans' court's conclusion that her payment of $7,674.00 to cover funeral costs should be returned to Decedent's estate. Latisha contends that O'Rean had withdrawn her objection to the payment of funeral expenses. While it is true that O'Rean initially testified that she did not object to Latisha's payment of funeral expenses, she later clarified that she indeed objected to their payment. N.T., 1/7/13, at 92; N.T., 1/9/13, at 256. The orphans' court properly relied upon O'Rean's clarification. Orphans' Court Opinion, 12/4/13, at 18.

Latisha suggests that because the Ameriprise account was titled "TOD," and she, along with O'Rean, "split any assets in the account following death," Latisha's Brief at 41, as fifty percent owner of the account, Latisha had a right to pay Decedent's funeral expenses. *Id*. We reject this claim. The orphans' court's conclusion was correct based on the evidentiary record. We do not agree that the record conclusively established Latisha's lawful right to draw checks on the account. As the orphans' court concluded, when she paid the funeral expenses, Latisha "was no longer authorized to make withdrawals after her mother's death." Orphans' Court Opinion, 12/4/13, at 18. Latisha's authority as agent under the POA expired upon her mother's death. General Power of Attorney, 10/11/06, at 1 (NOTICE); O'Rean's Exhibit 2; Petition to Show Cause, 4/9/10, Exhibit A at 1. However, also as noted by the orphans' court, "[t]he payment of funeral expenses is a legitimate expense of an Estate[,] and the [c]ourt, in this ruling, in no way bars [Latisha] from requesting and being reimbursed for this cost from the Estate." Orphans' Court Opinion, 12/4/13, at 18 n.5.

Therefore, for the aforementioned reasons, we affirm the validity of the gifts that were within the annual gift tax exclusion amount and affirm the surcharge to Latisha Bitts of gifts of $25,200.00 and funeral costs of $7,674.00, totaling $32,874.00. In addition, we reverse the orphans' court's decision that the gifts of $330,000 and $5,000.00 to Adam Bitts were not

subject to return, and order the repayment of $335,000.00 to Decedent's estate. We remand to the orphans' court to direct the return of said gifts and funeral costs to Decedent's estate.[11] Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/2015

---

[11] In the absence of any particularized argument regarding interest, we affirm the orphans' court's denial of interest. Orphans' Court Opinion, 12/4/13, at 19.