J-A16035-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF SOPHIA M. | : | IN THE SUPERIOR COURT OF |
| KRASINSKI A/K/A SOPHIA | : | PENNSYLVANIA |
| KRASINSKI A/K/A SOPHIA | : | |
| KRASINSKY LATE OF MORRISDALE | : | |
| (COOPER TOWNSHIP), CLEARFIELD | : | |
| COUNTY, PENNSYLVANIA DECEASED | : | |
| NOVEMBER 4, 2006 | : | |
| | : | |
| APPEAL OF: ESTATE OF SOPHIA M. | : | |
| KRASINSKI AND ITS EXECUTOR, | : | |
| EDWARD KRASINSKI | : | No. 1265 WDA 2015 |

Appeal from Order July 16, 2015,
in the Court of Common Pleas of Clearfield County,
Orphans' Court at No(s):  1707-0003

| | | |
|---|---|---|
| IN RE: ESTATE OF SOPHIA M. | : | IN THE SUPERIOR COURT OF |
| KRASINSKI A/K/A SOPHIA | : | PENNSYLVANIA |
| KRASINSKI A/K/A SOPHIA | : | |
| KRASINSKY, LATE OF MORRISDALE | : | |
| (COOPER TOWNSHIP), CLEARFIELD | : | |
| COUNTY, PENNSYLVANIA DECEASED | : | |
| 11/04/06 | : | |
| | : | |
| APPEAL OF: PATRICIA KRASINSKI- | : | |
| DUNZIK | : | No. 1289 WDA 2015 |

Appeal from Order July 16, 2015,
in the Court of Common Pleas of Clearfield County,
Orphans' Court at No(s):  1707-0003

BEFORE:  SHOGAN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:　　　　　**FILED OCTOBER 5, 2016**

The Estate of Sophia M. Krasinski (the Estate) through its executor,

Edward Krasinski (Edward), appeals from the order entered on July 16,

2015, which granted in part and denied in part exceptions to the order

confirming the first and final accounting of the Estate.  Patricia Krasinski-

* Retired Senior Judge assigned to the Superior Court.

Dunzik (Patricia) also appeals from that order. Upon review, we affirm in part, vacate in part, and remand for proceedings consistent with this memorandum.

## I. Background

This matter arises from a dispute between siblings over the distribution of the real property from the Estate of their mother, Sophia M. Krasinski (the Decedent). The Decedent had four children: Patricia, who is married to Gary Dunzik (Gary) (collectively, the Dunziks); Eleanor J. Krasinski (Eleanor); James P. Krasinski (James); and Edward.

Sophia died testate on November 4, 2006, and the Estate was opened in 2007. Pursuant to the terms of her will, Edward was named as executor of the Estate and granted letters testamentary. The will directed that Sophia's debts and funeral expenses be paid from the assets of the Estate, and that the residue of the Estate be left in equal shares to her four children.

The primary assets of the Estate included three parcels of real estate. Those parcels were: 1) 20 acres of property with an appraised value of $55,000 (Johnny Hoover Place);[1] 2) a barn and 95 acres of property, which includes 68 acres of coal rights, with an appraised value of $230,000 (Wicks'

---

[1] The tax-assessed value of this parcel was $6,798.10.

Place);[2] and 3) a house, buildings, and 98.84 acres with an appraised value of $200,000 (Homestead Place).[3]

On July 7, 2010, Edward, in his capacity as executor of the Estate, filed a petition to permit the private sale of real estate to heirs. In that petition, Edward averred that Patricia was objecting to the distribution of all three properties because it is her position she already owns them based on a prior oral agreement between herself and Sophia. After argument and briefing, on March 22, 2011, the orphans' court granted the Estate's petition to permit private sale of the real estate. Specifically, the orphans' court concluded that Patricia did not produce a writing to satisfy the requirements of the statute of frauds to show that she owned these properties. The orphans' court also concluded that Patricia did not present sufficient evidence to remove the purported oral contract from the statute of frauds.[4]

---

[2] The tax-assessed value for this parcel was $40,866.37. This property surrounds James' home. Johnny Hoover Place and Wicks' Place are adjoining properties.

[3] The assessed value for this parcel was $35,784.74. The Dunziks built the house and barn on Homestead Place and reside there. The proposed deeds for both Johnny Hoover Place and Homestead Place included a provision that a right of way be established from Johnny Hoover Place through Homestead Place to give Johnny Hoover Place access to the public road.

[4] The private sale was delayed further after the Dunziks filed a civil complaint against the Estate. On December 24, 2012, after a non-jury trial, the trial court found that there was no oral contract between Sophia and Patricia and dismissed the case.

Prior to the sale, letters were sent by the Estate's attorney to all four heirs explaining the process by which the sale would occur.[5] Included in this letter was a provision indicating that if the Dunziks did not purchase all of the property of Homestead Place, there would be steps taken to ensure they could maintain ownership of the home and barn on the property.

The private sale was conducted on February 15, 2013. Edward, James, and Patricia attended the sale.[6] Patricia did not bid on any of the properties. James and his wife, Marie, bid $230,000 for Wicks' Place. Edward bid $55,000 for Hoover Place. Edward, James, and Marie jointly bid $120,000 for Homestead Place.

On March 7, 2013, the Estate petitioned the orphans' court to approve the sale of these properties to these heirs for these amounts. The provision for the Dunziks' ownership of the house and barn at Homestead Place was not included in the deeds. On March 14, 2013, Patricia filed *pro se* an

---

[5] The letter explained, *inter alia*, that all heirs were permitted to utilize their proportionate shares of the value of the Estate towards the purchase price of any property with any difference to be paid in cash upon approval by the orphans' court. In other words, each heir walked into the sale with approximately $121,250 to use toward the purchase of one or more properties.

[6] Eleanor filed a document disclaiming her rights to the Estate and assigning her proportionate share to Patricia. Moreover, Patricia contests her presence at the sale, claiming she stopped in at 2:30 p.m., gave the attorney Eleanor's filing, said she would not be selling her half-share, and then left immediately thereafter.

objection to the petition.[7]  On April 30, 2013, after argument, the orphans'
court approved the Estate's petition.

On May 30, 2014, the Estate filed a first and final accounting.  Patricia,
through counsel, filed six objections.  Those objections included: 1) concerns
related to how the private sale was conducted; 2) the failure to include
language about the Dunziks' residence in the deed after the sale; 3) the
failure to include right-of-way language in the deed for Homestead Place; 4)
a claim that inaccurate appraised values were being used for the properties;
and 5) tax implications related to the differences between the appraised
values and tax assessed values for the properties.[8]

A hearing was held on all objections on September 5, 2014.
Testimony and evidence were sparse at this hearing and the majority of the
testimony did not relate to the objections filed by the Dunziks.  Furthermore,
Patricia did not appear; however, both Gary and the Dunziks' attorney
appeared.

---

[7] This handwritten objection includes a series of complaints about how
James and Edward treated Sophia while she was dying.  Patricia also averred
that Edward was taking payments for the gas leases and not giving them to
the Estate.  She further claimed both Edward and James have assaulted her
in the past.  Finally, she claimed she owned some mineral rights in the
properties.  Patricia did not object on the basis that no provision was made
for her house and barn at Homestead Place.

[8] Objection six was a series of miscellaneous objections.  The issues related
to objection six are discussed in section III, *infra*, as they relate solely to the
Estate's appeal.

On September 10, 2014, the orphans' court ordered Patricia to file a brief within 30 days, and also provided the Estate 20 days to respond. Patricia did not file a brief, but the Estate filed answers to the objections on October 27, 2014.

On April 22, 2015, the orphans' court entered an order and opinion in this matter. With respect to objections one through four, concerning the private sale of the properties, the orphans' court concluded these issues were waived because they should have been raised in an appeal from the order confirming the private sale on April 30, 2013, pursuant to Pa.R.A.P. 342. As to objection five, the orphans' court concluded that the Estate acted appropriately with respect to the tax implications about which Patricia complains. Thus, the orphans' court overruled these objections. The orphans' court sustained, in part, objection six.

On May 4, 2015, Patricia filed a motion for reconsideration.[9] On May 13, 2015, the orphans' court granted Patricia's motion for reconsideration and set argument on two issues. Those issues included: 1) whether the April 30, 2013 order was a final order, and 2) whether the value of timber

_____

[9] A motion for reconsideration was procedurally improper in this case. The Pennsylvania Orphans' Court Rules provide for exceptions. **See** Pa.O.C. Rule 7.1(a) ("[N]o later than twenty (20) days after entry of an order, decree or adjudication, a party may file exceptions to any order, decree or adjudication which would become a final appealable order under Pa.R.A.P. 341(b) or Pa.R.A.P. 342 following disposition of the exceptions. If exceptions are filed, no appeal shall be filed until the disposition of exceptions[.]").

removed from the property was included properly in the accounting.[10] ***See***

Order, 5/13/2015. On July 15, 2015, the orphans' court entered an order

concluding that Patricia's motion for reconsideration would be deemed

exceptions, and then dismissed those exceptions.[11] The orphans' court also

overruled the exceptions filed by the Estate with respect to objection six.

The Estate timely filed a notice of appeal, and Patricia filed a cross

appeal. The Estate, Patricia, and the orphans' court complied with Pa.R.A.P.

1925.

In considering both appeals, we bear in mind our well-settled standard

of review.

> The [o]rphans' [c]ourt decision will not be reversed unless there
> has been an abuse of discretion or a fundamental error in
> applying the correct principles of law. This Court's standard of
> review of questions of law is *de novo*, and the scope of review is
> plenary, as we may review the entire record in making our
> determination. When we review questions of law, our standard
> of review is limited to determining whether the [orphans']court
> committed an error of law.

***In re Fiedler***, 132 A.3d 1010, 1018 (Pa. Super. 2016) (citations and

quotation marks omitted).

## II. Patricia's Appeal

We first consider Patricia's arguments related to the private sale of

property that occurred on February 15, 2013. She argues that the orphans'

---

[10] The record is not clear as to when any issue with timber was raised for the first time.

[11] The record does not contain a transcript of a hearing, and it is not clear whether a hearing was actually held.

court erred in permitting this sale because it "was never intended to and did not, in fact, maximize the value of the real estate for the benefit of all of the heirs[.]" Patricia's Brief at 13. Patricia also argues that she was not given adequate notice of the sale. *Id*. at 15. Patricia further contends that there was no need for a right of way between Johnny Hoover Place and Homestead Place. *Id*. at 16. Patricia also argues that James and Edward "changed[d] the terms of the sale" by not providing an allowance for the home and barn owned by the Dunziks. *Id*. at 19.

The orphans' court concluded that Patricia has waived these issues by failing to appeal from the April 30, 2013 order confirming the private sale pursuant to Pa.R.A.P. 342. Orphans' Court Opinion, 4/22/2015, at 8. Pennsylvania Rule of Appellate Procedure 342 provides that "[a]n appeal may be taken as of right from the following orders of the Orphans' Court Division: … (6) An order determining an interest in real or personal property[.]" Pa.R.A.P. 342(a)(6). Furthermore, the "[f]ailure to appeal an order that is immediately appealable under paragraphs (a)(1)-(7) of this rule shall constitute a waiver of all objections to such order and such objections may not be raised in any subsequent appeal." *Id*. at (c).

Instantly, there can be no dispute that the April 30, 2013 order determined an interest in real property. In fact, it clearly transferred real property from the Estate to the heirs. Accordingly, it was immediately

appealable, and Patricia's failure to do so at that juncture renders all issues related to the sale waived.

In Patricia's next two issues, she contends that Edward mishandled the tax implications of the Estate to her detriment, and the orphans' court erred in accepting Edward's valuations. Patricia's Brief at 23-32. In considering these issues, we bear in mind the following.

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the [o]rphans' [c]ourt's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*In re Estate of Bechtel*, 92 A.3d 833, 837 (Pa. Super. 2014).

In concluding that these issues are without merit, the orphans' court offered the following.

> In regard to Objection No. 5 wherein [Patricia] objects to receiving the 1099-S documents as to her sale of the one-half interest in the properties thereby incurring a capital gains tax, the Estate has acted appropriately. 20 Pa.C.S.A. § 301 entitled Title to Real and Personal Estate of the Decedent indicates, in part, as follows: (b) Real Estate. - Legal title to all real estate of a decedent shall pass at his death to his heirs or devisees, subject to all the powers granted to the personal representative by this Code and lawfully by the will and to all orders of the court.

Therefore, while the Estate may have appeared to be the owner and seller of the properties, legal title actually was immediately vested in Sophia's four children as of her date of death. Since [Eleanor] renounced her right to her one-fourth interest to [Patricia], [Patricia] is deemed to have sold her 50% interest in the real estate via [Edward], the Executor, who had the legal power to do so pursuant to Court Order….

Since [Patricia] chose not to be involved with the auction, she in effect has sold her interest and is subject to a capital gain. It would be the same thing if the private sale had been the result of a partition action between co-tenants in which some of the co-tenants bought, and other of the co-tenants sold, their interests. The title would then be held by a smaller list of owners and the sellers would then be required to deal with capital gains tax considerations….

This [c]ourt is not learned or trained in complex Internal Revenue regulations, statutes, or law. However, it doesn't take an expert to determine that when property is sold there may be capital gains tax considerations. Here, even though she did not want to, [Patricia] has sold her interest in the properties. The Estate has submitted correct paperwork to the Internal Revenue Service. As to what [Patricia's] actual basis is in the property is and what if any capital gains tax she must pay, this [c]ourt will leave that to the accountants and tax lawyers. The bottom line is that the Estate acted correctly in reporting what the sales did.

Orphans' Court Opinion, 4/22/2015, at 11-12.

Essentially, Patricia is now arguing that it is the Estate that sold the real property, and therefore she should not be subjected to any tax implications. Patricia's Brief at 27. However, as the orphans' court aptly pointed out, Patricia did indeed own half of these properties upon the Decedent's death, and by virtue of her decision not to purchase them from the Estate, she sold her half-share to her brothers. Any tax consequences

that may result from this sale are her burden. Accordingly, she is not entitled to relief on this basis.

Finally, to the extent Patricia is arguing the properties are over or undervalued, any issue as to valuation should have been raised in relationship to the private sale that was confirmed by the April 30, 2013 order. Because we determined, *supra*, that was an appealable order, Patricia has waived those issues. **See** Pa.R.A.P. 342.[12]

### III. The Estate's Objections

We now turn to the issues raised by the Estate and provide the following background. Contained within Patricia's sixth objection to the first and final accounting was the following:

> 41. [Edward] has received and improperly withheld from [Patricia] revenues related to gas exploration and leasing in the approximate amount of $40,000.00 related to the oil and gas contained within and underlying [Homestead Place].

> 42. [Patricia] is the owner of the oil & gas interest underlying [Homestead Place], by virtue of a deed from Edith Nearhood, dated July 9, 2002, and recorded as Instrument No. 200211242.

---

[12] In her concurring and dissenting memorandum, Judge Shogan suggests that the Estate should be responsible for any taxes based upon the language of Decedent's will. However, Patricia never set forth this language as a basis for her argument about who is responsible for taxes. Accordingly, we may not reverse the orphans' court order for this reason. **See Harber Philadelphia Ctr. City Office Ltd. v. LPCI Ltd. P'ship**, 764 A.2d 1100, 1105 (Pa. Super. 2000) ("The Superior Court, as an error-correcting court, may not purport to reverse a trial court's order where the only basis for a finding of error is a claim that the responsible party never gave the trial court an opportunity to consider.").

Objections to First and Final Accounting, 7/3/2014, at ¶¶ 41-42.

In sustaining this objection, ruling in favor of Patricia, and ordering the Estate to pay Patricia $39,536, the orphans' court stated the following.

> [The aforementioned objection] claims that [Edward] improperly withheld gas monies in the amount of $40,000.00 relating to [Homestead Place]. It states therein that [Patricia] is the actual owner of oil and gas interests underlying [Homestead Place] by virtue of a deed recorded in Clearfield County as Instrument No. 200211242. This deed was not offered as an exhibit at [the] time of [the] non-jury trial. Following the non-jury trial and receipt of briefs, while preparing the court's opinion, the undersigned went to the recorder of deeds and obtained a copy of [the deed which Patricia references]. The court hereby takes judicial notice of the deed, and the court has caused it to be filed with the record for potential appellate review. This 2002 deed is from Edith Nearhood as grantor, to [Patricia] as grantee. The deed describes a parcel of 96 acres and one hundred and eight perches in Cooper Township, Clearfield County, with Tax Map number 110-R2-9, and purports to convey coal, gas and oil, and other subsurface rights to [Patricia]. [Homestead Place] in the case at bar is identified with tax map number 110-R7-9.
>
> ***
>
> This court can find no testimony from the non-jury trial where this issue, being [Patricia's] claim that she is the full and complete owner of the oil and gas interests under this tract, was discussed. In fact, no evidence was submitted by either party.
>
> ***
>
> A close examination of the first and final account shows on page 9 under "Other Income" the gas lease payments. By far, most of the payments are from [Homestead Place]. (A total of $39,536.00). On page 3 under "Receipts of Principal" the Estate lists its assets; [Homestead Place] is number 4 under the "Real Estate" heading. It is described as "House, buildings, and 98.84 acres (**less 96 A of coal, minerals, gas & oil**)…." (Emphasis added). The same exclusion of sub-surface rights [appears in

other exhibits]. The court, in trying to analyze this mishmash, wondered if perhaps the sale of [Homestead Place] was not to include the oil and gas rights such that the same could be retained in the Estate for the future benefit of all heirs. However, a review of the documents describing the terms of the private sale provides no reference whatsoever to any oil, gas or other sub-surface rights as to [Homestead Place].

[] Exhibit 27 is a copy of the memorandum of lease dated September 15, 2009 wherein [Edward, as executor of the Estate,] confirms the Estate has entered into a gas lease (or consultant agreement) with Long Consulting Group. This is clearly referring to [Homestead Place,] as the property subject to the lease is described as Tax Parcel No. 110-R07-9, 98.84 acres and in Cooper Township. The court wonders how the executor can enter into a gas lease on a property which the first and final account (and the inheritance tax return) clearly indicates that the oil and gas rights are excluded. (at least 96 acres thereof).

Based upon a substantial lack of information and a severely inadequate record, the court must decide if the Estate properly accounted for the gas royalties from [Homestead Place]. The court boils it down to the following. [Patricia] has a deed purporting to convey to her all sub-surface rights beneath the Homestead surface. The Estate in its Inheritance Tax return and first and final account clearly indicates it does not own 96 acres of oil, gas and other sub-surface rights below the Homestead surface. The court finds [Patricia] has met her burden of proof and finds the Estate erred by including Homestead [Place] gas royalties in the amount of $39,536.00 as an Estate asset. These monies will be paid to [Patricia] and removed from the Estate assets.

Orphans' Court Opinion, 4/22/2015, at 17-19 (unnecessary capitalization and some citations omitted omitted).

Based on the foregoing, the orphans' court sustained Patricia's objections listed in paragraphs 41 and 42, and required the Estate to pay Patricia $39,536. The Estate filed exceptions, arguing that Patricia was not the owner of the sub-surface estate at issue, and the orphans' court erred by

granting Patricia compensation on this basis. The Estate also contends that Edith Nearhood never owned the sub-surface estate and that any deed she granted could not have conveyed what she did not own.

On July 15, 2015, the orphans' court denied the Estate's exceptions, concluding that the Estate "has attempted to introduce facts and documents not of record in the present matter" in support of its denial. Order, 7/15/2015, at ¶ 1. This issue is the basis of the Estate's appeal.

The Estate first contends that the orphans' court erred by purporting to take judicial notice of the Nearhood deed, then giving it conclusive effect, and thereby sustaining Patricia's objections related to the oil and gas payments. Estate's Brief at 11-16.

> Pa.R.E. 201(b) governs judicial notice of adjudicative facts. The rule states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Pa.R.E. 201(b). A court may take judicial notice of an indisputable adjudicative fact. A fact is indisputable if it is so well established as to be a matter of common knowledge. Judicial notice is intended to avoid the formal introduction of evidence in limited circumstances where the fact sought to be proved is so well known that evidence in support thereof is unnecessary.

*Kinley v. Bierly*, 876 A.2d 419, 421 (Pa. Super. 2005) (some citations and quotation marks omitted).

Here, the orphans' court took judicial notice of a deed filed in the recorder of deeds office. This, in and of itself, was not error because it is well settled that "the court has the right to take judicial notice of public

documents." ***Bykowski v. Chesed***, Co., 625 A.2d 1256, 1258 n.1 (Pa. Super. 1993). However, the rule provides that "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard." Pa.R.E. 201(e).

Instantly, the Estate became aware of the orphans' court's decision to take judicial notice when it filed its opinion on April 22, 2015. The Estate timely filed exceptions contesting the implications of the deed on May 12, 2015. However, the orphans' court denied these exceptions on the basis that "the record has previously closed." Order, 7/15/2015. Thus, it is clear that the Estate did not have the opportunity to be heard. Where, as here, a party has made a timely request to be heard after learning of the judicial notice, the orphans' court was obliged to entertain it. Pa.R.E. 201(e).

In this case, the need was even more apparent where the orphans' court took judicial notice without any request by Patricia or notice to any party. The orphans' court then went on to offer a series of factual conclusions on this basis. The Nearhood deed may or may not be a valid deed to the property. However, the orphans' court should leave it to Patricia and the Estate to litigate that issue. Accordingly, we vacate the portion of the orphans' court's order granting Patricia's objection as stated in paragraphs 41 and 42, and remand to the orphans' court to conduct a

hearing on this objection. At that hearing, the burden is on Patricia, as the party objecting to the first and final accounting, to present evidence of her right to those oil and gas payments. We affirm the order of the orphans' court in all other respects.

Order affirmed in part, vacated in part, and remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Olson concurs in the result.

Judge Shogan files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2016